By the Court. Duer, J.
We are clearly of opinion that the plaintiffs are entitled to judgment upon the verdict which the jury was instructed to render.
The usage that was offered to be proved on the trial was confined to this city. It was strictly a local usage, and as the evidence offered went no further than to prove its existence, it was properly excluded. The law may be considered as settled, that proof of a local usage can never be received to vary the construction that the law would otherwise give to a contract, unless it is clearly proved that its existence was known to the parties, and that their contract was made in reference to its terms. (Goday v. Lloyd, 3 Bing. 793; Bartlett v. Pentland, 10 B. & Cross, 760; Russel v. Bangley, 4 B. & Al. 368; Scott v. Irving, 1B. & Al. 605; vide 1 Duer on Ins., 263 § 57, and note § 1, p. 286, where cases collected.) Chancellor Walworth, indeed, in the case of Allen v. Dykers, in the Court of Errors, (7 Hill, 497,) seems to have held that a usage of the Brokers in Wall street can never be given in evidence when opposed to the general law of the state, but he probably meant only to say, that such a usage does not bind the parties merely by its existence, without proof that they intended it should govern their contract. We do not doubt that a local usage is just as binding as a general, when it appears with sufficient certainty that it was in the contemplation of the parties when they made their contract. In such a case, it becomes a part of their agreement, with the same effect as if incorporated in terms. In the case before us, there was no offer on the part of the defendant, to show that the alleged usage was known to the plaintiffs, nor, consequently, that they meant to be bound by it. The offer, as made, was, therefore, properly rejected, as insufficient and irrelevant.
The usage being out of the case, the right of the plaintiffs to recover is not at all doubtful, even upon the supposition that a *34 pledge of promissory notes, or other securities for money, stands on the same ground, as a pledge of stocks or merchandise, and carries with it the same authority to sell the property, in the event of a default in the payment of the debt, it was intended to secure. When the contract is silent, as to any such authority, it is certain that a sale binding on the debtor can only be made after payment of the debt has been demanded, and reasonable notice of the time and place of sale has been given; this last condition evidently implying that, in all cases, the sale must be public. (Cortelyou v. Lansing, 2 Caines’ Cases, 200; Allen v. Dykers, 3 Hill, 593; S. C., 7 Hill, 497; Stearns v. Marsh, 4 Denio, 227; Brownell v. Hawkins, 4 Barb. 491; Wilson v. Little, 2 Comst. 443.) In the present case, a demand of payment was proved, but the sale was made without any notice of time and place, and was private. There was, indeed, a general notice of an intention to sell, but it would be extravagant to suppose, that such a notice, without any designation of time or place, is that which the law requires. It was plainly insufficient and ineffectual. The sale, therefore, although it may have passed a title to the purchaser, was, in respect to the plaintiffs, unauthorized and void; and, consequently, the liability to them of the defendant is exactly the same that it would have been, had he retained the notes and collected the amount of each, as they severally became due.
What we have now said would suffice for the decision of this case, but it is not our intention to pass over the far more important and interesting question, which the bill of exceptions distinctly presents, and to which the arguments of the counsel before us were principally directed, namely: whether the general rule that a creditor has an implied authority, where the contract is silent, to sell the property pledged to bim as collateral security, if the debt remains unpaid, is applicable, not only where the pledge consists of stocks or merchandise, but equally, when it consists of promissory notes, or bills of exchange, or other choses in action; or whether, in respect to these, the authority implied is not limited to the collection of the securities, and the use of the necessary means to enforce their payment ? That such, in these cases, is the only authority that can be implied, was the opinion of the Chief Justice upon the trial, and it was mainly upon this ground that he directed a verdict for the plaintiff. He adheres to this opinion; and, after some *35 hesitation and doubt, I concur with him in holding that it is a true expression of the law that we are bound to declare.
Although the broad terms in which the general rule is laid down, both by Chancellor Kent and by Mr. Justice Story, (2 Kent’s Com. pp. 582-3; Story on Bailments, § 310,) seem to warrant the inference that the authority of the pledgee to sell is coextensive with the power of the debtor to create the pledge, and consequently embraces every species of property which is a legitimate subject of the contract, it is, nevertheless, certain that there is no reported case in which the doctrine has been carried to this extent. There is no adjudication that a sale by a pledgee of evidences of debt, created by individuals, can be justified, otherwise than by an express authority; and when we inquire into the reasons upon which the modern rule is founded, and by which alone it can be defended, it will at once be seen, that to a sale of this character they are wholly inapplicable, and that by sustaining an authority to make the sale we should open a wide door to imposition and fraud.
In all cases, when personal property is placed in the hands of a creditor as a collateral security, it is a very reasonable presumption that the parties intend that, in the event of a failure on the part of the debtor to meet his engagement, the property shall be applied, in some form, to the satisfaction of the debt. They mean, that out of or by means of the property, the loan or advance for which it is pledged shall be reimbursed ;1 and it is obvious, that where the property consists of stocks or merchandise, it is only by a sale that it can be made available to the purpose intended. Hence, in these cases, the authority of the pledgee to sell is founded, not on an arbi-; trary rule, but upon the actual intention of the parties, as deduced, not merely from the nature of the contract, but from that of the: property which it embraces. And it is evidently upon this grounthat Chief Justice Gibbs, in Pothonier v. Dawson, (1 Holt, N. P. R. p. 385,) placed his decision, (Story on Bail, § 311.)
And here I cannot refrain from remarking that, so far as I have been able to discover, Pothonier v. Dawson is the only case to be found in the English books in which the implied authority of a pledgee to sell, without resorting to a court of equity, has been judicially asserted. I am aware that there are other cases which are usually referred to, as having introduced and established the doctrine, and these are Tucker v. Wilson (3 P. Will, 261 S. C. 1 *36 Brown, P. Ca. 494) and Lockwood v. Ewer (2 Atk. 303;) but it is remarkable that, in each of these cases, the contract was, upon its face and by its necessary legal construction, a mortgage and not a pledge, and this Chancellor Kent, in his opinion in Hart v. Van Eyck, expressly admits (2 John. Ch. R. 100, vide also Cortelyou v. Lansing, 2 Caines’ Cases, 210.) I mention these facts, as proving that the doctrine of an implied authority rests more upon a general usage, which, in respect to stocks and merchandise, is well known, and has long prevailed, than upon any decisions of controlling authority. It ought not, therefore, it seems to us, to be extended by construction to any cases which the usage, as general and known, has failed to embrace. In the very elaborate and learned opinion which was prepared for delivery by Chancellor Kent, as a Justice of the Supreme Court, in Cortelyou v. Lansing, but was never, in fact, delivered,* he speaks of a sale by a pawnee after notice, as a practice which then prevailed “in cases of the transfer of stocks,” (2 Caines’ Cases, 212,) and was evidently of opinion that it was to such cases that the practice and the authority were confined.
It is certain, indeed, that, by the ancient rules of the common law, a sale of a pledge could only be made under and in pursuance of a judicial sentence, and that it was only by force of such a judicial sentence that the right of the pledger to reclaim could ever bebarred, (2 Caines’ Cases, pp. 204,205; Story on Bail, §§ 210, 246.) And when we reflect upon the security against abuse and fraud which these rules certainly afforded, we may be disposed to regret that they have ever been relaxed; but if the modern doctrine, that the pledgee has an election, to resort to a court of equity or to sell ex suo motu, be confined to sales of merchandise and stocks, under the conditions already named, it seems that there is very little reasomto fear that the interests of the debtor will not be sufficiently protected. As stocks and merchandise have, at all times, a known market value, if they are sold at public auction, and after due personal notice to the debtor, it is not probable that *37 he will sustain any loss that would not have occurred had the sale been judicial, while, at the same time, he is relieved from the expenses that would necessarily attend a judicial proceeding. It is, doubtless, because experience has shown that such are the facts, that the usage of a sale, in these cases, by the mere act of the pledgee, has become established, and that the sanction of the courts has been given to the practice.
It follows from these observations, that the reasons by which alone the doctrine that a pledgee has an implied authority to sell, where the contract is silent, can alone be justified, and upon which we are therefore bound to suppose that it is in reality founded, are: first, the necessity of a sale, as the only means of obtaining a satisfaction of the debt; and next, the probability that by a sale properly conducted} the rights and interests of the debtor will not be sacrificed; nor can it be denied, that where these reasons exist, the intention of the debtor to clothe the pledgee, with the requisite authority, may be reasonably and safely inferred.
It is manifest, however, that neither of the reasons that has been stated can be said to exist when the pledge consists solely of the personal securities of individuals, and hence, it seems to us, that, in such cases, no court can be warranted to infer the existence of a similar intention. It is true that the same presumption exists in these, as in all other cases, that the parties intend that the pledge shall be applied to the satisfaction of the debt, but this presumption is far from justifying the belief that the debtor contemplated, and meant to authorize, a sale. 'It cannot be said, that a necessity for a sale exists in order to furnish the means of satisfying the debt, since those means are furnished by the securities themselves, and will result from that, which the parties doubtless anticipate, their actual payment as they become due; and as the personal obligations of private individuals, with rare exceptions, can have no market value, it is certain that a sale, whether public or private, before they reach their maturity, will involve a large sacrifice of their true value, and entail a heavy loss upon the unfortunate debtor, and of this the very case before us affords a striking example and proof. It is, therefore, not reasonable to believe that the debtor, in creating the pledge, meant to confer an authority, the exercise of which he must have known would be attended by these consequences, and which the object *38 to be answered—the reimbursement of the creditor—would not require. On the contrary, the reasonable presumption is, that he meant to give no other or larger authority than would enable the pledgee to use the property for the purpose intended—the satisfaction of the debt—and, therefore, meant to give no other authority than that of collecting the amount of the securities from the parties liable, and of adopting the necessary means of enforcing payment; and it is this conclusion, we are convinced, that a just regard to the nature and object of the contract, the protection of the debtor, and the intentions of the parties, requires us to adopt. It may be that the doctrine, that has been contended for, of an unlimited discretion to sell, would better suit the interests, and correspond with the usage of brokers; but as a learned senator observed in Allen v. Dykers, the usages of brokers are not always in perfect harmony with the interests of their employers, or with the rules of justice and sound morality.
The only reported cases we have found in which a promissory note has been the subject of a pledge, are Garlick v. James, (12 John. 146;) and Bowman v. Wood, (15 Mass. 534,) and in each, the language of the court certainly implies, although we will not say that such was the decision, that the only authority of the pledgee is to receive the amount of the note from the party liable.
In holding, as we do, that a pledgee of chases in action, created by private individuals, and having no market value, 'has not an implied authority to sell them, we are not to be understood as saying that a sale may not, under special circumstances, be decreed by a Court of Equity. We decline, however, to express or intimate an opinion upon a question, which is not before us, and which, when it arises, will demand a serious consideration.
There must be judgment for the plaintiffs for the sum found by the jury, with costs.

 In Barrow v. Paxton, (5 John. 260,) when Cortelyou v, Lansing was referred to, by the counsel for the defendant, as a decision of the court, Kent, Ch. J., said: “ That case was never decided by this court. It was argued once, and 1 had prepared the written opinion, which appears in the report of Mr. Caines, hut the court directed a second argument, which, for some reason, was not brought on, so that no decision took place.”—(R.)