JOSEPH A. DONOHOE AND EUGENE KELLY, APPELLANTS, *v* ALEXANDER GAMBLE, RESPONDENT.

BILLS OF EXCHANGE AND PROMISSORY NOTES HELD AS COLLATERAL SECURITY FOR A DEBT. — Whether negotiable paper endorsed over to and held by the creditor as security for the payment of a debt, without any other express agreement between the parties, is a mortgage or a pledge? *Quere?*

COURTS OF EQUITY—POWER OF OVER THE PLEDGE OF NEGOTIABLE INSTRUMENTS. —Has a Court of Equity power to decree the foreclosure and sale of a negotiable instrument, in satisfaction of the debt for which it is held in pledge, under ordinary circumstances? *Quere?*

IDEM. — Under special circumstances, a Court of Equity has the power to decree the sale of such instruments so held.

IDEM. — Where the maker of the note or bill of exchange resides in a remote country, or in a different State, and it is not shown that he has any property subject to seizure and sale, within the jurisdiction of the Forum, there is presented such special circumstances as to authorize the holder of the instruments given in pledge to resort to a Court of Equity for a foreclosure and sale.

The cases of *Wheeler* v. *Newbould* (5 Duer, 29); Same case—15 N. Y. (2 Smith) 392; *Brown* v. *Ward* (3 Duer, 660), and *Atlantic Fire and Marine Insurance Co.* v. *Boies* (6 Duer, 583), commented on and doubted.

*Per* RHODES, J., dissenting:

NEGOTIABLE INSTRUMENTS ASSIGNED AS COLLATERAL SECURITY FOR A DEBT. — Where a negotiable instrument is assigned as a collateral security for a debt, and no special contract is made, the contract, rights, liabilities and duties of the parties are the same as in the case of the assignment of the same instrument for value, with the exception that the assignee undertakes to pay the assignor the overplus he may receive after the satisfaction of the principal debt.

POWER OF A COURT OF EQUITY NOT INVOKED BY THE CIRCUMSTANCES OF THIS CASE. — No facts appear in this case which take it out of the ordinary course of procedure.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

A statement of the case is contained in the opinion of the Court.

*Doyle & Barber,* for Appellants.

*First*—Whether the note was mortgaged or pledged, is not material to the decision of the case, for, in either event, the remedy by foreclosure is equally applicable ; but as the decision below is made to turn on it, it may very properly be considered and decided.

There is ample authority for holding that the *endorsement* and *delivery* of the note as collateral security amounted, in legal effect, to a mortgage, as distinguished from a pledge. (*Breese* v. *Bange,* 2 E. D. Smith, 474; *Huntington* v. *Mather,* 2 Barb. 538 ; *Brown* v. *Bement,* 8 Johnson, 96 ; *Langton* v. *Buell,* 9 Wend. 80; *Hoyt* v. *Martin,* 16 N. Y. 231.)

Where, for the purpose of securing a debt, the debtor performs an act which, by operation of law, transfers the *title* to a chattel, the law characterizes the transaction as a mortgage. It is idle to say that the debtor did not so intend it, for the law says he did intend the legal effect resulting from his acts.

Where a chattel is transferred by bill of sale, upon an agreement that it shall be held as collateral security, the transaction is a mortgage, *because the title passes.* If the chattel is simply deposited as security, it is a pledge, because the title does not pass. (*Brown* v. *Bement,* 8 John. 96.)

The endorsement and delivery transferred the legal title to the note as effectually as a written assignment would transfer the title to a chattel. The contemporaneous agreement amounted to a parol defeasance, and made the transaction a mortgage.

*Second*—Assuming that the note was held in pledge, we claim that the plaintiffs were entitled to a decree directing its sale, and foreclosing the defendant's right to redeem.

1st—The right to proceed by action to foreclose the equity of redemption, and for a sale of property held in pledge, has been too long established to be seriously questioned. The right is not qualified by exceptions; it is general, and applies to every species of property which may be made the subject of pledge.

Formerly, the pledgee was compelled, in all cases, to resort to an action for the enforcement of his lien; he could not sell of his own motion, either at public or private sale. The action of foreclosure was the general remedy, and the only remedy. (Story on Bailments, Secs. 210, 246; 2 Kent's Com. p. 581; 2 Bell's Com. Sec. 701. See, also, *Cortelyou* v. *Lansing,* 2 Caine's cases, 200; *Hart* v. *Ten Eyck,* 2 John. Ch. 69, 99.)

2d—Modern decisions have not qualified or abridged the remedy by action, but have given to the pledgee an additional remedy. The modern doctrine, as it has stood for many years in England, and in this country, permits the pledgee to sell at public sale, upon due notice, without resorting to an action. He has the option to protect himself, by obtaining the decree of a competent Court directing a sale, or to sell without it, and take upon himself the responsibility of determining the sufficiency of notice, etc. (2 Kent's Com. 581–2; Story on Bailments, Sec. 310; *Cortelyou* v. *Lansing,* 2 Caine's Cases, 200; *Hart* v. *Ten Eyck,* 2 John. Ch. 62, 99; *Wilson* v. *Brannan,* 27 Cal. 271.)

3d—That a Court of Equity has general power to enforce the lien of a pledgee, by decreeing foreclosure and sale of the pledge, is unquestioned. And the power of a Court to enforce the lien must, in the nature of things, be co-extensive with the right of the parties to create it. Whatever property can be made the subject of a pledge, must also become subject to the power of foreclosure in equity—that being one of the incidents of a pledge.

*Garlic* v. *James*, in the Supreme Court of New York, was the case of a pledge of promissory notes. In that case, the right of a pledgee to resort to a Court of Equity for the foreclosure of his lien and a sale of the notes, was distinctly recognized as undoubted. (12 Johnson, 146.)

4th—The decision of the Court below is professedly based upon the authority of *Wheeler* v. *Newbould* (16 N. Y. Rep. 392.) That case is not, however, an authority on the point; nor is the reasoning of the Court pertinent to the question presented here.

In that case, the defendants had loaned to the plaintiffs $2,000, receiving their check therefor, payable at a future day, with certain notes as collaterals. After the check matured, the defendants sold the collaterals before they became due, *at private sale, and without notice to the plaintiffs of the time or place of sale.* The Court, at *nisi prius,* held the sale to be void, for want of notice.

At general term of the Superior Court (5 Duer, p. 29), and in the Court of Appeals (16 N. Y. p. 392), a question not involved in the case, viz : whether a pledgee of commercial paper can sell, of his own motion, even upon notice and at public sale, was discussed, and in the opinion given, a distinction was drawn between commercial paper and other property held in pledge ; and it is there said that the modern doctrine, which gives the *pledgee* power to sell *without the sanction of a Court,* is not applicable to a pledge of commercial paper.

This case, with the subsequent cases of *Brown* v. *Ward* (3 Duer, 660), and *The Atlantic Insurance Co.* v. *Boies* (6 *Id.* 583)—where the same doctrine is incidentally asserted—were the only ones cited in support of the proposition

adopted by the Court below in its opinion, but it is manifest none of them touch the case. They only deny the right of the pledgee of negotiable paper to sell the pledge of his own motion, and without the interposition of a Court.

It may, however, be observed that, even as to the power of the pledgee to sell, of his own motion, the case of *Wheeler* v. *Newbould* would be a very doubtful authority in this State. The reasoning of the learned Judge who delivered the opinion is all founded on considerations of public policy, as derived from the law of New York. That law differs widely from ours in the very points from which such public policy is inferable. Mere choses in action are not regarded as chattels by the law, save in a very modified degree; they cannot be seized or sold under execution, but are *only* reachable by a creditor in equity, or by the analogous modern proceedings supplementary to execution. (*Ingalls* v. *Lord*, 1 Cow. 240; *Bogert* v. *Perry*, 17 John. R. 352.) Here, they can be seized and sold under a *fi. fa.*, just as a horse, or a stock of goods. (Practice Act, Sec. 217; *Davis* v. *Mitchell*, 34 Cal. 81.)

5th—The Court below seems to have been influenced by the consideration that there may be danger of sacrificing the security pledged, by permitting a sale under any circumstances.

This may be true. The debtor may not be able to bid and pay the value of the security, but such an argument is quite as conclusive against the right to sell on *execution*, as under a judicial decree—indeed, it operates with equal force against all judicial and *quasi* judicial sales. But it is merely the hardship of poverty, which human Courts cannot take into account.

There is no distinction as to the right to sell "between the case of a pledge and a mortgage of chattels." (2 Kent's Com. *583.)

In the case of a mortgage, an express power of sale only furnishes a cumulative remedy. Without such power the mortgagee may foreclose, and sell by action. (*Cormerais* v. *Genella*, 22 Cal. 116; *Charter* v. *Stevens*, 3 Denio, 35; *Wilson* v. *Brannan*, 27 Cal. 270; 7 Paige, 279.)

*Third*—Even if *special circumstances* were requisite to confer upon a Court of Equity the power to foreclose a pledge of commercial paper, we were entitled to such foreclosure and sale here. The maker of the pledged note resided in New York, beyond the reach of process from our Courts. It would be most unreasonable to remit a plaintiff to a remedy in a foreign jurisdiction, whose laws even our Courts cannot take notice of, and require him to exhaust them before affording him redress at home, on a domestic contract.

Besides, the pledgee has no right to part with the pledge, or send it out of the country. The pledgor has the right, at any time, to tender the amount of his debt and demand its return, which the pledgee must comply with, or assume the responsibility of a conversion of the pledge. Suppose, while the pledged note is in New York, South America or China, in process of collection, the pledgor pays his debt, and demands return of the pledge, will the law excuse the pledgee from compliance with the demand because he has sent it away for collection? Suppose it lost, *in transitu,* who is to be the sufferer? The answer which every lawyer will give to these questions disposes of the proposition that the pledgee must collect a foreign note by legal proceedings. The fact is, that he has no right to send the note away for collection, save at the risk of being made guilty of a'conversion of it at any moment the pledgor sees fit to pay his debt.

*Wilson & Crittenden*, for Respondent.

*First*—The transaction was a pledge, not a mortgage. (Story on Bailments, Sec. 287; Edwards on Bailments, pp. 191, '2, '3—251–2; *Cortelyou* v. *Lansing*, 2 Caine's Cases, 200; *McLean* v. *Walker*, 10 Johns. R. 472.

*Second*—In a case of a pledge of a chattel, we do not deny, as a general rule, the right of the pledgor either to proceed by action, and have the pledge sold under decree of the Court, or to sell at public sale, upon due notice, without any action. But we say that there are exceptions to it, arising out of the nature of the thing pledged, and the contract of the parties as to the mode in which it is to be disposed of or

made available as security.   The contract, whatever it may
be in this respect, must govern.   The law will not make a
contract for the parties, nor will the Court undertake to
enforce as a contract what the parties never assented to.
The contract may be either express or implied.   Whichever
it may be, it must equally control.   But here, the question is,
what contract in that respect is to be implied by law, from
the mere delivery of the note in pledge?   And we may remark
that if this contract, as we contend, was one which prohib-
ited the sale of the pledge, either with or without action, and
which limited the authority of the pledgee to the mere col-
lection of the debt, it really makes no difference whether the
contract is called a mortgage or a pledge.   If it existed in
that form by implication, the effect is the same as if it had
been so declared by the parties in terms, and in the most
solemn manner.   The law but furnishes the words which the
parties are held and considered to have used to express their
intention.   If they had actually so contracted by deed, with
a defeasance, there would be no authority in the mortgagee
to sell, and no Court could rightfully direct a sale.

In *Wheeler* v. *Newbould* (5 Duer, 29), certain promissory
notes were delivered as collateral security, without any special
authority being conferred upon the lender.   The money not
being paid when it became due, their notes, after demand,
were sold at private sale, without other notice than a general
one that the pledgee would sell them.   The sale was attempted
to be sustained upon the usage of brokers to dispose of col-
laterals in this way, but the Court held that a local usage
could not control the law, unless it were shown that its
existence was known to the parties, and their contract was
made in reference to it.

The sale was objected to both on the ground of the manner
in which it was made, and on the ground that from the nature
of the pledge, the pledgee could not sell it at all, in any
manner, nor upon any notice.   The Court sustained both
objections, one being as much a point directly involved as
the other, and equally essential to be passed upon in order
to arrive at a conclusion.

In 16 New York R. (2 Smith, 392), this case of *Wheeler* v.

*Newbould* was reviewed, and the principle laid down by the Court below was sustained.

In the circumstances under which the pledge was made, *Wheeler* v. *Newbould* was identical with the case now presented, and it is to be observed that in both Courts the transaction was declared to be a pledge, and not a mortgage.

In *Brown* v. *Ward* (3 Duer, 660), the subject-matter of the pledge was bonds of a railroad company. The doctrine of *Wheeler* v. *Newbould* was recognized as the law, but held not to apply to securities of a public nature, but only to mercantile paper.

So in the *Atlantic Fire and Marine Ins. Co.* v. *Boies* (6 Duer, 583), the Court said : "If the pledge consist of commercial paper, the creditor must hold it until maturity, and collect and apply the proceeds in payment of the debt."

Assuming that mercantile paper cannot be sold by the pledgee without action, it follows from the same reasoning, as a necessary and inevitable result, that it cannot be sold under the decree of any Court, at least under ordinary circumstances.

The pledgee cannot sell, because, under the contract, his implied authority extending only to collect and apply the money, he is prohibited from selling. This implied contract is, in effect, the same as an express stipulation that the pledgee should collect and apply the money and account for any surplus, but should *not* make any other disposition of the pledge. How can he call upon a Court to aid him in doing what he is prohibited from doing? How can a Court say that the contract which is admitted to be binding upon the parties, is not binding on the Court? Or that there is one contract for the parties and another for the Court? If the power to sell is to be presumed not given to the pledgee because the property is of a character not to have any market value, and therefore a sale would be a sacrifice, and the power to make it would open the door to fraud and oppression, is the presumption less strong in regard to a sale made by a Sheriff under a decree? Is the nature of the thing changed by such a sale, or any market value thereby given

to it? Is there not as great a probability of sacrifice? Is not the door as widely opened for fraud and oppression?

Practically, we know that at judicial sales no property will bring as much as at a regular auction or private sale; and, probably, the relaxation of the old rule, that required all sales of pledges to be under a decree of Court, was due to experience and observation of the loss attending judicial sales.

This doctrine that mercantile paper, so pledged as collateral, shall not be sold at all, is certainly a reasonable one; and the grounds assigned for it, in respect to a sale by the pledgee, and equally to a sale made at his instigation through the instrumentality of a Court, seem to be all sufficient.

It is urged by appellants' counsel that the law of New York differs widely from our own; that in New York *choses in action* cannot be seized and sold under execution, while in this State they may be; and that, therefore, our Courts may exercise a power which the Courts of New York could not, to decree a sale of such property.

We do not see the force of the argument.

In *Davis* v. *Mitchell* (34 Cal. 81), it was held that a promissory note might be seized and sold under execution as other personal property might be, *because* the statute, as understood by the Court, so provided. So it might be, if by contract, it was expressly so agreed.

But this does not controvert nor at all affect our position, which is that the contract between the parties, which alone is to be enforced, or can be considered in this action, forbids a sale, and therefore no sale can be decreed. It is no answer to say that if there had been no contract between them at all, except the single one expressed by the defendant's note to the plaintiffs, the latter might obtain judgment for the amount of that, and then have levied upon and sold the note of Ferguson to the defendant. There *was* a contract, and the plaintiffs must abide by it.

It may be suggested that it is every day's practice, in every trading and mercantile community, and a large part of the business of banks and moneyed corporations, as well as individuals, to loan money upon bonds of the United States,

and·of other States and counties and corporations; that these bonds are but choses in action, and that to adopt or recognize the rule we insist upon, would interfere with the regular course of business, operate unjustly upon past transactions and tend to impair the value of such securities. There is no room for any such suggestion. As stated in the cases above cited, the rule has no application to public securities, and is limited to mercantile paper; and even in respect to such paper, if parties should deem it advisable to do so, they can provide, by a special contract, for a sale to be made in any manner they agree upon. The rule imposes no restraint upon their free action. It only refuses to interpolate in contract a stipulation not intended.

And, we apprehend that in this State the law always has been, and is understood to be as it is declared in this case by the District Court, and that the universal practice has been in accordance with that understanding. Such a thing as the sale of mercantile paper, delivered as collateral security, with no special agreement on the subject, probably never occurred in the City of San Francisco; and we think the idea that such a sale might be made, either by the pledgee or under the order of a Court, would be a novel idea to lenders of money, and a rather alarming one to the somewhat numerous class of borrowers.

CROCKETT, J., delivered the opinion of the Court:

The facts of the case are, that the plaintiffs loaned to the defendant $5,000 in gold coin, and took his promissory note therefor. At the same time, and as collateral security, the defendant endorsed, transferred and delivered to the plaintiffs a promissory note of one Ferguson for $12,000, payable to the defendant on his order or demand. It further appears that a large proportion of the debt from the defendant to the plaintiffs remains due and unpaid ; that Ferguson resides in the State of New York, and the plaintiffs caused the note for $12,000 to be presented to him for payment, which was refused, and the note was thereupon protested for non-payment.

The complaint in this action states, substantially, the foregoing facts, and prays for a foreclosure and sale of Ferguson's note in satisfaction of the debt due from the defendant, and for a personal judgment against the defendant for the deficiency. The answer does not deny the foregoing facts, but sets up as a defense to the action, that it is the duty of the plaintiffs to collect Ferguson's note by process of law, and apply the proceeds to the satisfaction of their demand; and that the Court has no authority to decree a foreclosure and sale. On the trial, the District Court decided the transaction to be a pledge, and not a mortgage of Ferguson's note; and held, as a conclusion of law, that the plaintiffs, as pledgees, have no authority to sell the note, or cause it to be sold, in satisfaction of their demand, and cannot maintain an action for the foreclosure and sale thereof.

The Court also refused to enter a personal judgment against the defendant for the amount due, and dismissed the complaint with costs; and thereupon the plaintiffs have appealed.

If the transaction be held to be a chattel mortgage and not a pledge, it is conceded by counsel that it might be foreclosed, as any other mortgage. Treating it as a mortgage, no reason has been suggested why it might not be foreclosed. Nor do we understand counsel as controverting the proposition that a pledgee of personal property may, if he elects so to do, cause the pledge to be sold, under a decree of a Court of Equity, in satisfaction of the debt. But it is insisted that a pledge of commercial paper, such as notes, bonds and bills, stands upon a different footing, on account of their peculiar nature; that in the absence of a contract to that effect, authorizing a sale of them, the pledgee has no power to sell them or cause them to be sold by a decree of a Court or otherwise, and can only make them available by collecting them in due course of law.

For the purposes of this decision, we shall assume that the transaction in question was a pledge and not a chattel mortgage, and shall assume it, also, as a conceded point, that a pledge of personal property may be foreclosed by a decree of a Court of Equity, in the same manner and with like effect

as if it were a mortgage. This brings us to the question whether or not a pledge of a bond, bill or promissory note stands upon a different footing. The argument for the respondent on this point is founded chiefly on considerations of public policy. It is said that to permit a *sale* of such securities would often, and perhaps generally, result in a ruinous sacrifice, greatly injurious to the debtor, and equally so to the creditor, unless he should avail himself of his superior information in respect to the solvency of the maker of the paper, to purchase it at the sale for less than its value, which would be a great hardship upon the pledgor; that a sale of the paper is not necessary to enable the pledgee to make it available for the satisfaction of his demand, inasmuch as he is clothed with the necessary power to enable him to enforce the collection of the security pledged; which is all that the pledgee can reasonably demand.

The leading case relied upon in support of this proposition is *Wheeler* v. *Newbould* (5 Duer, 29), and afterward affirmed in 16 New York (2 Smith, 392.)

The facts of the transaction in that case were very similar to those we are considering; but in that case, instead of resorting to a Court of Equity to procure a judicial sale of the note which was pledged, the pledgee caused it to be sold in the market, without a proper demand and notice, and it was the validity of that sale which was in contest. The Court held the sale to be void, first, for want of a proper notice ; and, second, on the ground that in the absence of a contract expressly authorizing a sale, the law would not imply an authority in the pledgee to sell the security for his indemnity, nor any authority except to collect the amount due on the notes which were pledged, and to apply the proceeds in satisfaction of his demand. The precise point before us in this case, to wit, the right of a pledgee to resort to a Court of Equity for a sale of the security, was not involved in that case. The Court does not decide that under special circumstances a sale may not be decreed. On the contrary, it says: " In holding as we do, that a pledge of *choses in action*, created by private individuals, and having no market value, is not an implied authority to sell them, we are not to be under-

stood as saying that a sale may not, under special circumstances, be decreed by a Court of Equity. We decline, however, to express or intimate an opinion upon a question which is not before us, and which, when it arises, will demand a serious consideration." It is evident, however, that the Court intimates that a sale could only be decreed under special circumstances.

In *Brown* v. *Ward* (3 Duer, 660), and in the *Atlantic Fire and Marine Insurance Co.* v. *Boies* (6 Duer, 583), similar views are expressed in respect to the authority of the pledgee to sell commercial paper pledged as security in satisfaction of the debt. These are the only authorities to which our attention has been called in support of the proposition ; and however the law on that point may be in New York, I am satisfied a different rule must prevail here.

Under Section 246 of our Practice Act, if commercial paper be *mortgaged,* the mortgage may be foreclosed and the securities sold under the decree ; and by Sections 217 and 220, such securities may be seized and sold under execution on a judgment at law. (*Davis* v. *Mitchell,* 34 Cal. 87.) We must infer that the policy of our law is not opposed to such sales, when they are expressly authorized on the foreclosure of a mortgage, or upon seizure under an execution at law. The same reasons which would forbid the sale of commercial paper which is pledged, would apply with full force to a sale of such paper under the foreclosure of a mortgage, or under an execution at law. In each case, the danger of sacrificing it for an inadequate price would be the same; and, inasmuch as a sale is expressly authorized in the two latter cases, we can perceive no reason why a different rule should prevail when it is pledged.

The conclusion reached by the Court in *Wheeler* v. *Newbould (supra),* and the other cases referred to, is founded on the assumption that commercial paper has no intrinsic market value ; that it is not, strictly speaking, merchandise ; that its value depends on the solvency of the maker, which may not be generally known ; and hence, that if exposed to sale, it would generally sell for an inadequate price, and result in a ruinous sacrifice to the pledgor. It is conceded,

in these cases, that the bonds of railroad and other like corporations do not fall within the rule, inasmuch as they generally pass by delivery and have a well known market value, and therefore are not likely to be sacrificed at a sale on proper notice. This distinction, however, would appear to be more fanciful than real. Commercial paper, of course, depends for its market value upon the supposed solvency of the maker, and in the neighborhood where he resides it is generally not difficult to ascertain the estimate in which he is held in this respect. At a place remote from his residence, it might be difficult, or impossible, to form any opinion on the subject. In the City of New York no one would doubt the solvency of a citizen generally known to be enormously wealthy—and his promissory note would, doubtless, sell for its full value. In a country village in California, he might be wholly unknown, and his promissory note in that locality might, and probably would, have little or no market value. But the same rule applies to corporations. The commercial value of their paper depends upon their supposed solvency. In places where they are known and supposed to be solvent, it would bring its full value in the market; but in remote places, where they are unknown, it might have no market value whatever, however solvent the corporation might be. It is apparent, therefore, that the market value of commercial paper, and of the bonds of public or private corporations, depends on the same conditions, to wit: The extent to which the makers are known in the particular locality, and the estimate in which their solvency is held. The market price of the security, whether of private persons or of corporations, will vary in proportion as the makers of it are, much or little, favorably or unfavorably, known at the place of sale; and though some corporations may be more widely known than a majority of private citizens can be, on the other hand there are many private citizens more generally known than a majority of corporations, and whose wealth and credit are on as stable a basis as those of any corporation. These being the facts, I can perceive no valid reason for the distinction made by the

New York Courts between the two classes of securities, and the rule which they establish will be found, I think, to be inconvenient and impracticable.

But it is conceded that the pledgee may resort to a Court of Equity for a foreclosure and sale in special cases; and, in my opinion, the case we are considering comes within that category. Ferguson, the maker of the note pledged to the plaintiff, resides in New York, and it is not shown that he has any estate in California subject to seizure and sale. The same reasons which would require the plaintiffs to pursue him with legal process in the Courts of New York, would equally demand that they should follow him to Europe, South America or any other foreign country, where he might be known to be domiciled. This would impose a hardship on the pledgee, which evidently was not within the contemplation of the parties. If that be the rule, the pledgee would be forced to incur all the trouble, expense and hazard of pursuing the maker through the Courts of a foreign country, and, perhaps, might realize nothing in the end. We think he is under no obligation to incur this trouble and expense, but may go into equity for a foreclosure and sale of the note for whatever it will bring in the market at a judicial sale. The pledgor has due notice of the proceeding, and if the security should bring an inadequate price at the sale, it will be his misfortune, which he might have guarded against by a proper stipulation in the contract. This view of the case renders it unnecessary for us to decide whether the plaintiffs were entitled to a personal judgment against the defendant on the pleading.

Judgment reversed, and cause remanded for a new trial.

RHODES, J., dissenting:

I am of the opinion that the plaintiffs were entitled, upon the pleadings, to a judgment for the amount due upon the promissory note of the defendant. I do not concur with Mr. Justice CROCKETT in the views that the plaintiffs, upon the facts appearing in the complaint, are entitled to a judgment directing the sale of the note of Ferguson. When a prom-

issory note is assigned as collateral security for a debt, and no special contract is made, the contract, rights, duties and liabilities of the parties are the same as in the case of the assignment of a note for value, except in one respect, which is that the assignee undertakes to pay to the assignor the overplus that he may receive on the collateral, after the satisfaction of the principal debt. The law governing such contracts is derived from the custom of merchants, or rather such custom is the law. The parties usually, as in this case, execute no contract in writing, but the holder of the note merely endorses it, and the law declares the nature and effect of the contract, and fixes the rights and liabilities of the respective parties. A case might, perhaps, be stated that would authorize the holder of the collateral note to have a decree of sale, but no facts are stated in the complaint which take this case out of the ordinary course of procedure, except that the note was assigned by way of mortgage, and that the plaintiffs were authorized to sell it in due form of law, etc.; but there is no evidence to that point except that it was endorsed in blank by the defendant as collateral security. It was proven that payment of the note was demanded of Ferguson, and that the note was returned to the plaintiffs protested for non-payment, but these facts do not appear in the complaint, nor is it therein alleged that the note remains unpaid.

If this is held to be a mortgage as the plaintiffs contend (though I am inclined to the opinion that it is a pledge), the words of the Practice Act, read literally, are broad enough to include it, and authorize a judicial sale of the note. The 246th Section provides "that there shall be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action shall be in accordance with the provisions of this chapter." Since the adoption of that provision in 1860, actions, almost without number, have been brought for the recovery of the principal debt, and I have never heard it objected that the plaintiff should have proceeded by foreclosure and sale of the note assigned as collateral security for the debt. That is not the practical construction which

that clause has received at the hands of the profession, nor do I think it has been so understood by business men. There is no good reason why the Legislature should interfere to give a different effect to a contract of that kind and a new remedy to the assignee ; but every reason and consideration is against it (see *Wheeler* v. *Newbould,* 5 Duer, 29, and 16 N. Y. 392; *Atlantic Ins. Co.* v. *Boies,* 6 Duer, 583), and, in my judgment, such was not the intention of the Legislature.