[Civ. No. 2137.  Second Appellate District, Division Two.—June 28, 1919.]

## TRADERS BANK OF LOS ANGELES (a Corporation), Appellant, v. W. W. WILCOX, Respondent.

**[1]** PLEDGE—PERSONAL EVIDENCES OF INDEBTEDNESS AS COLLATERAL SECURITY—RIGHT OF PLEDGEE TO SELL.—Where personal evidences of indebtedness are pledged as collateral security, no right is created in the pledgee, in the absence of express agreement, to personally cause a sale of the securities; and he is only entitled to equitable relief and an order for judicial sale when there are special conditions shown which were not in the contemplation of the parties when the contract was made, and which would impose additional hardships on the pledgee if he was required to rely upon the collection of the collateral debts at their maturity.

**[2]** ID.—DELAY IN COLLECTING PRINCIPAL OBLIGATION—EQUITY.—The fact that the collateral note is payable in monthly installments, and that it will take twenty-eight months to collect the balance

due on the principal obligation, is not sufficient to entitle the
pledgee to equitable relief and an order for judicial sale.

[3] ID.—RIGHT OF PLEDGEE TO MAINTAIN INDEPENDENT SUIT.—A
pledgee may bring an action at law and recover the amount of
his debt from his debtor by an independent suit for a personal
judgment without selling or foreclosing the pledge.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

J. W. McKinley for Appellant.

Barstow, Beach & Rohe for Respondent.

THOMAS, J.—This is an action brought to foreclose de-
fendant's equity of redemption in a note, copy of which is
set out in plaintiff's complaint, which was pledged by de-
fendant to plaintiff as security for the payment of defend-
ant's note for two thousand dollars, which is also set out
in plaintiff's complaint, and upon which default was made
by defendant in payment according to its terms. The ap-
peal is taken by plaintiff from the judgment, upon the
judgment-roll alone.

By the briefs on file in this case in this court it is made
to appear that the only question here is as to whether plain-
tiff is entitled to foreclose against defendant and procure a
judicial sale of the note pledged with it, or is obliged to
wait the maturity of the pledged note and then collect the
same from the makers.

Counsel for respondent contend, and the court found, that
appellant held said collateral note under the terms of sec-
tion 3006 of the Civil Code, and it being so held, that appel-
lant was not entitled to foreclose against respondent and
procure a judicial sale of the note pledged with it; while
appellant insists that the provisions of section 3006 of the
Civil Code only apply to sale by the pledgee himself, and in
no way affects the general rule that appellant is entitled to
enforce an obligation in accordance with its terms, and to
procure a decree of foreclosure of the equity of redemption
of any property which has been placed in its hands as
security. Appellant further insists that the provision of

section 3011 of the Civil Code is not to be given the strict construction contended for by respondent, and is not only applicable to cases in which the pledgee would have the right, without court procedure, to make a sale of the pledged property, but is intended to apply to all cases in which property is pledged; that this is the plain and reasonable interpretation of the section by itself; that in the absence of any provision of the Civil Code upon the subject the plaintiff would have, as it still has, an equitable right to foreclose the security given by defendant for the performance of the express obligations of his note, the payment of which was, at the time of the commencement of this action, ever since has been and now is, in default; that section 3011 is apparently applicable to any pledge, and simply recognizes the right of any pledgee to foreclose the right of redemption by judicial sale; that the court has always had this power, from the very earliest time, as shown by the sections in the Practice Act and decisions by the courts in two different cases under that section; and that the code has not changed this power of the court by section 3006 of the Civil Code, which refers to another matter, but, on the contrary, that section 3011 of the same code expressly gives the court this power. In other words, appellant's contention, briefly put, is that the remedy provided by the latter section is cumulative, and that it is not limited to the remedy provided by section 3006; but, while it may use that, it can also invoke the procedure provided by section 3011, *supra*.

We are not able to agree with appellant's contention here. Section 3006, *supra*, in our judgment settles this phase of the case. The provisions of this section were designed, we think, for the benefit of the pledgor, and may be waived by him. We find nothing, however, in the record here showing any such waiver. The pledgor being himself the respondent here, appellant, we think, is bound to a strict compliance with the terms of this section.

There can, we think, be no doubt that, prior to the codes, where the contract did not expressly give the pledgee the right to sell or foreclose commercial paper pledged as collateral, a court of equity would not order a judicial sale of the security save under special circumstances. Such security has no market value. It is presumed to be not readily marketable, and generally must be sold at a sacrifice.

Hence its sale, whether by the pledgee or by the sheriff under judgment of a court, may not bring a fair price. The general rule is that the pledgee is bound to collect, and, if necessary, sue upon, the collateral as and when it falls due, and apply it upon the debt secured. (Jones on Collateral Securities, sec. 651.) There is, therefore, ordinarily no reason why the pledgor should be compelled to suffer the loss consequent upon a sale of the collateral at a sacrifice. In our opinion, the most compelling reason why a court of equity will not decree the sale of such collateral, in the absence of special circumstances, is that, ordinarily, the pledgee or principal debtor has an adequate remedy at law. That is to say, the principal debtor may, and, indeed, is in duty bound, to collect the debt pledged as collateral as and when it falls due, and bring suit therefor if necessary. This right to collect the debt pledged as security affords, as a rule, a complete and adequate legal remedy; and for this reason there is no reason for the interposition of equity. (*Whitteker* v. *Charleston Gas Co.,* 16 W. Va. 717, 722. See, also, *Richardson* v. *Ashby,* 132 Mo. 238, [33 S. W. 806]; *Cleghorn* v. *Minnesota Title etc. Co.,* 57 Minn. 341, [47 Am. St. Rep. 615, 59 N. W. 320]; *Donohoe* v. *Gamble,* 38 Cal. 354, [99 Am. Dec. 399].) Special circumstances, such as will be held sufficient to take a case out of the general rule and justify the interposition of a court of equity to decree a judicial sale of notes or other evidence of indebtedness pledged as collateral security, exist where the pledgor is insolvent and the collateral note has many years to run after the maturity of the principal debt. (*Cleghorn* v. *Minnesota Title etc. Co., supra*), or where the principal debtor is a nonresident and has no property within the jurisdiction of the forum (*Donohoe* v. *Gamble, supra*). No circumstance of a special or peculiar nature, such as would justify a court of equity in ordering a judicial sale, has been pleaded or shown in this action.

[1] We think, therefore, that the correct interpretation of the rule, both under the common law and the code, is that where personal evidences of indebtedness are pledged as collateral security, no right is created in the pledgee, in the absence of express agreement, to personally cause a sale of the securities; and that he is only entitled to equitable relief and an order for judicial sale when there are special

conditions shown which were not in the contemplation of the parties when the contract was made, and which would impose additional hardships on the pledgee if he was required to rely upon the collection of the collateral debts at their maturity.

Sections 3000–3005 of the Civil Code provide that when the performance of an act for which a pledge is given is due, the pledgee may collect the same by a sale of the property pledged, "subject to the rules and exceptions thereinafter prescribed," and further direct the manner and conditions under which such sale shall be made. Section 3006 states what is excepted from the right to sell, as follows: "A pledgee cannot sell any evidence of debt pledged to him, except the obligations of governments, states, or corporations; *but he may collect the same when due.*" This is conclusive of the whole matter unless section 3011 enlarges the pledgee's remedy with regard to this class of securities. It provides that "instead of selling property pledged, *as hereinbefore provided,* a pledgee may foreclose the right of redemption by a judicial sale, under the direction of a competent court."

There are two reasons within the terms of the statute itself why we think the section last cited does not apply to ordinary commercial paper. First, section 3006, in forbidding such sale by the pledgee, goes on to point out how he may realize on his security by the clause: "but he may collect the same when due"; and, second, section 3011, in authorizing equitable foreclosure and judicial sale of property pledged "as hereinbefore provided," limits its application to the character of pledges which are thereinbefore, by the sections above cited permitted to be sold. In other words, it provides an alternative method of selling pledges other than evidences of indebtedness. It may be conceded that this latter reference is not conclusive, as the section, so far as its wording is concerned, might be open to the construction contended for by appellant; but in our opinion there is no legal escape from the conclusion that the denial of right to sell such securities in section 3006, coupled with the provision; "but he may collect the same when due," was intended to provide an exclusive remedy, in the absence of some special claim to equitable relief such as might arise under any contract. Although there has been no direct

judicial construction of these code provisions in this state, as to this limitation of section 3011, the interpretation here presented seems to be suggested by practically every reference we have found to section 3006 in the California decisions. In *McArthur* v. *Magee,* 114 Cal. 126, [45 Pac. 1068], the court says: "It need only be pointed out that by section 3006 of the Civil Code a pledgee is forbidden to sell any evidence of debt pledged to him, but his right is limited to collecting the same when due"—and to the same effect in other decisions. (*Gault* v. *Wiens,* 32 Cal. App. 1, [161 Pac. 996]; *Woolf* v. *Clark,* 17 Cal. App. 696, [121 Pac. 407]; *Frese* v. *Mutual Life Ins. Co.,* 11 Cal. App. 387, [105 Pac. 265]; *Hunt* v. *Glassell,* 30 Cal. App. 676, [159 Pac. 227]; *Kelly* v. *Matlock,* 85 Cal. 122, [24 Pac. 642].)

We find the same limitation recognized generally, whether under statutory provisions or the common-law rule governing pledges of this character. The commonly accepted rule is stated in Jones on Collateral Securities, section 651, as follows: "A pledgee of commercial paper as collateral security cannot, in the absence of special authority for that purpose, sell it upon the nonpayment of the debt upon notice to the pledgor, either at public or private sale, but he is bound to hold and collect the same when it falls due, and apply the money to the payment of the debt secured." (*Wheeler* v. *Newbovld,* 16 N. Y. 396; *White* v. *Phelps,* 14 Minn. 27, [100 Am. Dec. 190]; *Union Trust Co.* v. *Rigdon,* 93 Ill. 458; *Zimpleman* v. *Veeder,* 98 Ill. 613; *Stone* v. *Dickinson,* 89 Mass. (7 Allen) 26; *Miller* v. *Horton* (Okl.), L. R. A. 1918C, 625, [170 Pac. 509]; *Keeble* v. *Jones,* 187 Ala. 207, [65 South. 384].) The only decisions cited, or which we have been able to find, that recognize the right of a pledgee to go into a court of equity to obtain an order of sale of this class of collateral security, including *Donohoe* v. *Gamble,* 38 Cal. 354, [99 Am. Dec. 399], were clearly influenced, at least, by the existence of special circumstances creating equitable claims of the pledgee not entering into the original pledge transaction. It is true that most of the decisions denying the right of sale of this class of securities arise on attempted sales by the pledgee, but in nearly every instance this negation of the right of sale is coupled with the statement that the pledgee is "bound to look to the collection of the collateral debt for his security," without mak-

ing reference to any possible recourse to a court of equity.
Yet the right to an equitable foreclosure and sale of all
pledges that are subject to sale is universally recognized,
and was formerly the sole method of procedure. In two
cases that we have found, the right of resort to a court of
equity for an order of sale of commercial paper is, how-
ever, presented and expressly denied. In *Whitteker* v.
*Charleston Gas Co.*, 16 W. Va. 717, 722, which was a pro-
ceeding in chancery to obtain an order of sale, it is held
that where a chose in action is pledged as collateral secur-
ity, the pledgee has no right to sell such pledge unless a
power of sale is added to the agreement, "and a court of
equity has no jurisdiction to sell such order on the applica-
tion of the creditor." In *Richardson* v. *Ashby*, 132 Mo.
238, [33 S. W. 806], the supreme court of Missouri says:
"The right of disposition by sale of the notes held as col-
lateral is not one incident to the delivery and hypothecation
of the same. Although there is some conflict in the courts
of our country on the last proposition, we think the great
weight of authority, as well as the reason of the rule, sus-
tains the proposition that the holder of commercial paper
as collateral for the payment of a debt, cannot, in the ab-
sence of special power for that purpose, sell the security so
pledged upon default of payment of the debt, at public or
private sale, with or without notice, as in the case of ordi-
nary property on timely notice, *nor by order of court can he
dispose of the same.* He is bound to hold and collect the
security as it becomes due, and apply the proceeds to the
payment of his debt." The opinion above cited, however,
refers to the rule that equity may, under special circum-
stances, order a sale. The court on this point further says:
"Some of the courts of our country, however, hold to the
rule that where great inconvenience and loss are threatened
by reason of the long delay in the maturity of the collat-
eral, the court, on proper showing, may order the collateral
sold and its proceeds immediately applied to the payment
of the original indebtedness." If such a rule prevails, as
it justly should, it is not a right inherent in any implied
condition of the pledge contract, but arises from general
principles of equity jurisdiction, and depends upon circum-
stances extraneous to the pledge contract.

[2]  No such conditions are pleaded here, or appear from the record, other than the mere fact that the collateral note in question is payable in monthly installments of $50 each, and that it would take a period of twenty-eight months from the date this action was commenced to collect on the collateral the balance of one thousand four hundred dollars then due on the principal obligation. As this action was commenced September 4, 1915, and the findings show that the makers of the collateral note were entirely solvent, and one of them a director of the plaintiff bank, it is probable that the entire debt is paid off long before this. But in any event, the parties to the pledge contract entered into the agreement with full knowledge of the time and manner in which the collateral note was payable, and with presumptive knowledge of the law relating thereto; and there has nothing arisen subsequently to in any way jeopardize the value of the security.

We do not see that there is anything controlling in the point raised here, and referred to by the supreme court in *Donohoe* v. *Gamble,* 38 Cal. 354, [99 Am. Dec. 399], that commercial paper may, under the statutory law of California, be seized and sold under execution, or a sale may be ordered on foreclosure of chattel mortgage of the same. In the instances cited, the code of California permits the sale; in the matter of a pledge it forbids it. We are satisfied that plaintiff is not entitled to an order directing the sale of this collateral note.

[3]  But there is another question which we think should have our consideration, and that is the fact that the learned trial judge denied appellant all relief—not only a judgment foreclosing the collateral security, but even a personal judgment upon respondent's personal liability as maker of the principal note. We think that appellant was entitled to a personal judgment against respondent. There certainly can be no doubt but that a pledgee may bring an action at law and recover the amount of his debt from his debtor by an independent suit for a personal judgment, without selling or foreclosing the pledge. (*Commercial Savings Bank* v. *Hornberger,* 140 Cal. 16, [73 Pac. 625].) Is there any reason why he should not be entitled to the same relief where, as here, the pledgee has sought to procure a sale of the

pledge by judicial process, even although we assume that he is not entitled to relief by foreclosure? We think not.

The judgment is reversed, and the trial court directed to enter judgment in favor of plaintiff for the amount due on the principal obligation.

Finlayson, P. J., and Sloane, J., concurred.