* Rehearing denied 4 P.2d 163.
Three barriers have been erected between plaintiffs and the judgment for $87,550 and interest which they desire. The first barrier is the conclusion that the plaintiffs have no legal capacity to sue, because they have failed to file and publish a certificate of doing business under a fictitious name. Secondly, it is found that fraud guided the defendant's hand as he signed the twelve notes upon which recovery is sought. Lastly, it appears that plaintiffs failed to demand payment when the notes matured and neglected to tender the stock which had been pledged as security for the notes. We are of the opinion that the first of these barriers is without substance, that the second is without a sound foundation in the evidence thus far produced, and that only a new trial can determine how real an obstacle the facts, out of which the third barrier is built, may prove to be.
The notes sued upon were made payable to the National City Finance Company. This payee, the trial court found, is a common-law trust, with E. L. Junod, John L. Junod, and Myron J. Sophy, as trustees, doing business in their collective capacity under a fictitious name. None of these trustees, the finding further recites, has either filed or published a certificate of doing business under a fictitious name. As its conclusion of law, based on these facts, the trial court held that plaintiffs had no legal capacity to sue, having failed to comply with the provisions of sections 2466 and 2468, Civil Code. It is unnecessary to quote in full the provisions of these familiar sections. In brief, they declare that a suit may not be maintained by a person or partnership transacting business under a fictitious name until a certificate giving the names and addresses of those making use of the name has been filed and published. In view of the interpretation now placed upon these provisions, that the sections are complied with if, at any time before proof must be made of the fact, the filing and publication of the certificate take place (Rudneck v. Southern Calif. M. R. Co. [1920] 184 Cal. 274, 193 P. 775; Isom v. Shields [1924]69 Cal.App. 515, 231 P. 587), we see no reason why the provisions of these sections should be stretched to cover a business not plainly within their purview.
Common-law (or Massachusetts') trusts may or may not be partnerships, depending upon the degree of control that the beneficiaries have over the activities of the trustees. Where, as in the case under review, that control approximates absolute zero, they are held true trusts and not partnerships. See the extensive note in 7 A. L. R. 621. Plaintiffs, then, were not required to file a certificate as partners, for they were not. Nor do we believe that the reference of the sections to "a person transacting business under a fictitious name" applies to trustees of a common-law trust. We are not unmindful of the explanation of section14 of the Civil Code, speaking of the use of words, that "the singular number includes the plural." As first enacted in 1872, section 2466 began: "No partnership or person may transact business by a fictitions name." The Code amendments of 1873-74 deleted the word "person" from the section; then in 1911 it was reinserted (St. 1911, p. 440), the refereace to a partnership being left as it had been since 1804. It might well be argued that, had it been the legislative intent, either originally or as re-expressed in 1911, to have the section applicable to the various legal relationships under which two or more persons may transact business, it would have contented itself with the use of the word "person" and not specified both "person" and one form only of joint enterprise, that is "partnership." Section 14, Civil Code, also declares: "The word person includes a corporation as well as a natural person," and we know that a corporation is a method whereby "persons" transact business. Who has the temerity to hold that a corporation, both a person and a combination of persons, may not maintain an action without complying with the sections? Moreover, we see the trustees transacting business, not as natural persons, but solely in their representative capacity. The trust in this instance, furthermore, continues undisturbed by any change in the personnel of its trustees, and hence has at least one characteristic of a legal entity distinguishable from the persons who may for the moment have charge of its affairs and from those for whose benefit its affairs are conducted. We are persuaded that the judgment may not be upheld because of the absence of a certificate of the National City Finance Company from among those filed by persons and partnerships transacting business under fictitious names.
A brief survey of the events leading up to the execution of the notes sued upon is necessary to a discussion of the next two defenses. When the story begins, with which we are concerned, we find the defendant already in pussession, by purchase, of stock in the Vanderbilt Newspapers, Inc., of $30,000 par value. Then he was urged to take additional stock. Finally, when he was shown how it could be done without his putting up any money, he consented, buying $30,000 worth August 17; $40,000 more October 15; and then, November 5, all in the year 1924, $100,000 worth. The deal each time was the same, half cash, half defendant's note to the corporation. Of these particular notes we hear no more. The cash was paid by plaintiffs for the defendant under an arrangement whereby they took the stock as security; he giving them notes payable in six months, the face of the notes equaling the cash advanced together with interest for six months at 6 per cent. The actual cash paid the last time was $10,000 less than half the purchase price, but defendant was credited with having paid the full half, $50,000; the $10,000 being allowed plaintiffs, as a commission, by the Vanderbilt corporation. The first notes were renewed in February, 1925, and it is on these and those given in October and November this action is brought. As permitted by the notes, the terms of which will be regarded more closely a little later, plaintiffs sold the stock, prohably to obtain the money with which to make the cash payments; at any rate-some time before the notes matured.
In his final amendment to his answer, defendant, as an eleventh special defense, averred that his signature to the notes was secured through fraud, in this: (a) That plaintiff trustee, E. L. Junod, represented that the National City Finance Company was under the same management and control as the National City Bank of Los Angeles and the National City Bank of New York, and that said organizations were identical in responsibility, ownership, and management: (b) that Junod further represented to him that plaintiff's would hold the stock being purchased as collateral security for the loans to be made on his promissory notes. He alleged, furthermore, his reliance upon these statements and their falsity. In its fifteenth finding the trial court found these representations had been made, that they were not true, and that defendant had relied upon them and been defrauded. An additional misrepresentation is included in the findings, to the effect that the National City Finance Company was a responsible, reputable, substantial, and national institution. It should be noted that the finding does not indicate who made these representations to the defendant. The most serious fault with it, however, is that it is unsupported by, and is contrary to, the evidence. That defendant entered the three successive deals with a misunderstanding of some things may be true, but the evidence does not show that the plaintiffs were responsible or that they made any of the representations alleged or found, and it does show that defendant went into the transactions relying, not on the plaintiffs, whom he had not known, but on an agent of the corporation, Mr. Harvey, whom he had known. It is not without significance, in this connection, that it was not until almost two years after his first answer was filed, during which time he filed some five other answers, original and amended, to the complaint and the two complaints in intervention, that the defendant for the first time suggests that he had been influenced by fraudulent representations. The fifteenth finding, unsupported by the evidence, fails as a support for the judgment.
The ninth finding is the remaining one which is relied upon to support the judgment from which the plaintiffs and the two interveners have appealed. By it two events are found never to have taken place: A demand for payment of the notes by plaintiffs; a tender back to defendant of the stock pledged with plaintiffs. We are of the opinion that plaintiffs' failure to perform either of these acts is, in and of itself, no defense. A demand is not a condition precedent to bringing action even on a note payable on demand. Ziel, Bertheau Co. v. Dukes (1850)12 Cal. 479: Fix parte Howtly (1906) 2 Cal.App. 752, St. P. 229. It certainly is not required before suit in a case, such as this, where there was an unconditional promise to pay within a fixed time. See Danielson v. Neal (1913) 164 Cal. 748, 130 P. 716.
Whether or not an offer to return the stock was a condition precedent to plaintiff's right to judgment depends upon the nature of the transaction into which plaintiffs and defendant had entered. The notes and receipts determine this. Each of the twelve notes was in the same form, and read, so far as material to our problem (except for differences in dates and amounts), as follows:
"November 5th, 1924. For value received, 6 months after date I promise to pay to the National City Finance Co., or order, the sum of Ten Thousand Three Hundred — ($10,300.00) dollars with interest st the rate of 6 per cent. per annum after maturity.
"As security for the payment of the above note I hereby assign to the said National City Finance Co. the following securities: 200 Shares Vanderbilt Newspapers Inc. — Preferred 100 Shares Vanderbilt Newspapers Inc. — Common. We further agree to renew the note for three additional periods of six months each — if necessary, at the same rate of interest. It being understood that I waive all right to any dividends paid on the above securities to stockholders of record from this date to the date above note is paid, and it is further agreed that the said National City Finance Co. may, through its agents so authorized, hypothecate, transfer, sell or assign the aforesaid securities, or any part thereof, its only obligation in respect thereto being to return to me on the payment of the above note, on the date of muturity thereof, an equal number of shares of stock of the same class of said company. * * *
"[Signed] W. O. Lewis."
Each receipt given the defendant by plaintiffs recited that the stock was received "to be treated as set forth in a note of even date * * * a copy of the provisions relating thereto being set forth on the back thereof."
As a result of these instruments, all parties hereto contend, and we agree, defendant appears as pledgor of the corporation stock, and the plaintiffs received it as pledgees. As pledgees, they were under no obligation to offer to return the pledge to the defendant before bringing suit on the debt secured and obtaining judgment. Sonoma Valley Bank v. Hill (1881) 59 Cal. 107; French v. McCarthy (1899) 125 Cal. 508, 58 P. 154; Traders' Bank v. Wilcox (1919) 42 Cal.App. 24, 183 P. 256. Failure of plaintiffs to offer to return the pledged stock is not, of itself, a barrier to the judgment sought.
Because the three appeals from the judgment (taken by plaintiffs and the two interveners) present the same problems, in our discussion we have not found it necessary to refer to one appeal rather than another. The appeal from the order denying a motion to set aside the judgment and enter a new one upon the findings, ralses no question not already considered. Condon v. Donohue (1911) 160 Cal. 749, 118 P. 113. With the reversal of the judgment, the appeal from such an order becomes moot, and should be dismissed. As an appeal will not lie from an order denying a motion for a new trial (2 Cal. Jur. 174), that appeal should be dismissed. The debate, in which appellants and respondent have engaged, concerning the propriety of the order granting a new trial after the first trial of this action, must be a no-decision affair, for that order is not subject to review on an appeal from the judgment rendered on the second trial. Furlow Pressed Brick Co. v. Balboa Land Water Co. (1921)186 Cal. 754, 761, 200 P. 625.
The judgment appealed from is reversed: the appeals from the two orders are dismissed.
We concur:
HOUSER, Acting P. J.;
YORK, J.
 *Page 1