JOHN G. COPELIN, Respondent, v. THE PHŒNIX INSURANCE COMPANY, Appellant.

1. *Insurance — Total loss — Abandonment, what facts authorize.* — When a vessel insured is stranded, the question whether the loss shall be deemed partial, or so far total as to warrant an abandonment, will depend upon the nature and extent of the peril in which the vessel is involved and the probable difficulty, hazard, and expense of attempting to deliver and repair her. When it appears that by proper exertions she might have been gotten off, and fully repaired at a moderate cost, the abandonment is void, and a partial loss only can be recovered; and to warrant the recovery of a total loss it must be proved that the delivery of the vessel from peril was, upon reasonable grounds, judged to be impracticable, or not to be effected unless at an expense that would absorb her value. The question is one of fact, and must be determined by the jury from the evidence before them.

2. *Insurance — Abandonment — Repairs — Reasonable time.* — After a vessel is abandoned by her owner and taken in custody by the insurer, unless her repairs are made within a reasonable time the insurer forfeits his right to return her, and must be considered as having accepted the abandonment.

*Appeal from St. Louis Circuit Court.*

*Moss & Sherzer*, and *Lackland, Martin & Lackland*, for appellant, cited among others the following authorities: Hall v. Franklin Ins. Co., 9 Pick. 466; Small v. U. S. Ins. Co., 11 Pick. 90; Peel v. Suffolk Ins. Co., 7 Pick. 257; King v. Hartford Ins. Co., 1 Conn. 42; Marine Dock & Mut. Ins. Co. v. Goodman, 4 Am. Law Reg. 481; 2 Pars. on Mar. Ins. 142, note; Reynolds v. Ocean Ins. Co., 22 Pick. 198; Peel v. Merchants' Ins. Co., 3 Mason, 42–78; Wood v. Lincoln & K. Ins. Co., 6 Mass. 479–85.

*Glover & Shepley*, and *Rankin*, for respondent, cited Peel v. Suffolk Ins. Co., 7 Pick. 254; Reynolds v. Ocean Ins. Co., 1 Metc. 160; Peel v. Merchants' Ins. Co., 3 Mason, 27; Norton v. Lexington Fire Ins. Co., 16 Ill. 235; Reynolds v. Ocean Ins. Co., 22 Pick. 191; Copelin v. Phœnix Ins. Co. of N. Y., recently decided in U. S. Supreme Court; 2 B. Monr. 47; 10 Cush. 37; 2 Pet. 8, 10, 25.

WAGNER, Judge, delivered the opinion of the court.

This was an action brought upon a policy of insurance against the underwriters in favor of the plaintiffs, by which the steamboat Benton was insured for $5,000 for one year, commencing on the 26th day of March, 1865. The policy is in the usual form of marine insurance. The evidence in the case tends to show that on the morning of the 3d day of November, 1865, while the Benton was descending the Missouri river, a number of miles above Omaha, she was driven by a heavy wind upon a large snag with such violence that the snag went through her hull, making a large hole, from which she soon filled with water, and that she was run upon a bar as far as possible; that her officers immediately erected pumps and bulkheads, and commenced pumping, and used their best efforts to raise her, and that they worked for several days without success; that all the time the water was washing out from under midships and her bow; that her bow was settling down. She was in a bad condition, being twisted, and

in danger of breaking in two. While in this condition the officers concluded that they could only save her machinery, and that all the balance would be a total loss. These facts they telegraphed to the plaintiff, at St. Louis, and received instructions from him, and they say from the defendant also, to proceed to wreck her as the only means of saving anything. The weather at that time was cold, and the river about closing with ice. It appears that on the 21st day of November the defendant took possession of the boat or wreck for the purpose of raising or repairing her, and restoring her to the plaintiff; that on that day, as plaintiff considered her a total loss, he made a formal written abandonment of her to defendant; that on the 27th day of November defendant succeeded in raising the hull, as the river had fallen very much in the meantime. Defendant started with her for St. Louis on the 20th day of March, 1866, being prevented from going earlier, as is alleged, on account of the ice, and she arrived at that port on the 12th of April thereafter. She was then put upon the docks to be repaired, and on the 9th day of May, 1866, she was tendered to the plaintiff, six months after the loss, and two months after the expiration of the policy. The actual repairs cost $1,764.76, and the expense of raising her was 12,132.82; and she was worth, when tendered to the plaintiff, $12,000 only. Her valuation in the policy was $45,000.

There was further evidence going to show that defendant did not use proper diligence in making the repairs, and that all the repairs that were done could have been done within four days after the boat reached St. Louis; that the defendant did not repair the injury done by the sinking, and that it well knew this; that, in fact, it would have cost from $5,000 to $6,000 additional to have repaired the boat and put her in substantially as good condition as she was when she struck the snag, and that she was not properly repaired or tendered within a reasonable time. The case was tried before the court, and upon certain declarations of law the verdict was for plaintiff.

. Without particularly or in detail noticing the instructions given for the respondent, we will simply state the law as we understand it in regard to the question of abandonment.

In Norton v. Lexington Fire, Life & Marine Ins. Co., 16 Ill. 235, the court, after a very free discussion of the subject, say that the right to abandon must be determined by the judgment of experts, applied to the condition of the vessel at the time of abandonment; and although the cost of saving and repairing the vessel after her abandonment may be less than fifty per cent., yet if, at the time, the facts apparently justified an abandonment, it will be good.

In Ruckman v. Merchants' Louisville Ins. Co., 5 Duer, 36, Duer, J., a very high authority on the law of insurance, declares in the opinion that "the true principle upon which the whole doctrine of abandonment may be said to rest, and by which alone its application, in converting a partial into a total loss, can be justified, is that which in the leading case of Anderson v. Wallis, 2 M. & S. 240, is stated by Lord Ellenborough with his accustomed brevity and force. It is, that an abandonment is never to be authorized except when, at the time, the loss was actually total, or in the highest degree probable; and if we analyze the cases that have settled the law as it now prevails in England, we shall find that it is this principle that runs through, explains and justifies them all. To select an example from each class of cases: When the vessel insured is captured, there is an actual total loss; but, as she may be recaptured or restored, an abandonment is necessary to warrant its recovery; a title must be vested in the insurers to give them the benefit of the *spes recuperandi*. But when the vessel is stranded, the question whether the loss shall be deemed partial, or so far total as to warrant an abandonment, will depend upon the nature and extent of the peril in which the vessel is involved, and the probable difficulty, hazard, and expense of attempting to deliver and repair her. When it appears that by proper exertions she might have been gotten off, and fully repaired at a moderate cost, the abandonment is void, and a partial loss only can be recovered; and to warrant the recovery of a total loss it must be proved that the delivery of the vessel from peril was, upon reasonable grounds, judged to be impracticable, or not to be effected unless at an expense that would absorb all her value. In

other words, it must be proved that a loss actually total was in the highest degree probable." (Fontaine v. Phœnix Ins. Co., 11 Johns. 295 ; The Sarah Ann, 2 Sumn. 255.)

The learned judge then continues to notice the fact that in the United States we have departed widely from the sound doctrine of abandonment, by extending to the vessel that moiety rule which, in its original application, was confined to the goods, and which, thus confined, had itself no other foundation than the existing probability of the eventual total loss.

Judge Story distinctly announces the rule that in case of stranding, the course that an owner uninsured, in the exercise of his best judgment, would have followed, furnishes the correct test of the right of the assured to abandon. (The Sarah Ann, 2 Sumn. *supra.*)

Chancellor Walworth, in the case of The American Ins. Co. v. Ogden, 20 Wend. 302, holds the same doctrine ; and there would seem to be no reason why the same test might not, with equal justice, be applied to every case in which an absolute right to abandon is not established by conclusive proof that the cost of repairs would have exceeded half the value.

The matter resolves itself into a question of fact, and must be determined by the jury from the evidence before them. By the application of these principles we can not say that there was sufficient error in the first of the instructions given to justify a reversal. Although they are subject to some verbal criticism, yet they are substantially correct.

But the greatest objection is made to the instructions given by the court, which in effect declared that if the defendant, on or about the 21st day of November, 1865, took possession of said boat with a view of raising and repairing her, and retained her till the 9th day of May, 1866, before offering to return her to the plaintiff, and if she never was repaired as required by the terms of the policy, and if the defendant and its agents knew that she was not so repaired, and it would have required a large additional sum of money to have been expended upon her to have put her in such repair, and if the written notice of abandonment given by plaintiff was served on the defendant on the 22d day of November, 1865, then the plaintiff was entitled to recover.

Another instruction in substance told the jury that if the repairs could have been reasonably made in a much shorter time, and if the boat was not repaired and tendered in a reasonable time, then the verdict should be for the plaintiff.

It seems to be well settled that the owners of a vessel are not bound to receive her from the underwriters if there is any material deficiency in her repairs. She must be made as good as she was before.

As to the return of the vessel within a reasonable time, the cases lay down a uniform rule. I have seen but one authority denying the proposition, and that is an adjudication of an inferior court.

In Norton *et al.* v. Lexington Fire, Life & Marine Ins. Co., *supra*, it is held that if, after an abandonment, the underwriter takes possession of the vessel, although he does it under protest, and gets her off and repairs her, no matter at how small or great a cost, it is an acceptance of the abandonment if he does not return her in a reasonable time. This principle is first announced in Peel v. Suffolk Ins. Co., 7 Pick. 254, where it was explicitly adjudged that, unless the repairs are made within a reasonable time, the insurer forfeits his right to return the vessel, and he must be considered as having accepted the abandonment. In this last case the reason for the rule is thus stated by Parker, C. J.: "But the underwriter has his duties as well as his rights. If he took the vessel into his possession to repair her, he must do it as expeditiously as possible, in order that the voyage, if it be not completed, may not be destroyed. If he delay the repairs beyond a reasonable time, he forfeits his right to return the ship, and must be considered as taking her to himself under the offer to abandon. This principle can not well be contested. Without it, the underwriters may keep the assured entirely uncertain in regard to his rights and interests, and put his property in jeopardy. The right of the insurer to take into his custody the vessel of the assured without his consent, except under the abandonment, can not exist without the correlative duty to keep her as short a time as possible under the circumstances in which she may be placed."

The same principle is again affirmed in Reynolds v. Ocean Ins. Co., 1 Metc. 160, and in the case between the same parties in

22 Pick. 191. We are also informed by the counsel for the respondent that the principle has recently been examined and approved in the Supreme Court of the United States, but the decision has not been published, and we have not yet seen it.

The only case we have seen that controverts the above authorities is The Marine Dock & Mut. Ins. Co. v. Goodman, decided in the Mobile Court of Chancery, and published in 4 Am. Law Reg. 481. This case is not sufficient to overcome the great weight of authority arrayed against it, and its reasoning does not commend itself to our approbation. We see nothing objectionable in the action of the court in the matter of giving and refusing instructions on behalf of the appellant.

Our conclusion is that the judgment should be affirmed. The other judges concur.