RICHARDSON, *Administrator, Appellant,* v. ASHBY.

Division One, January 28, 1896.

1. Commercial Paper: COLLATERAL SECURITY: AUTHORITY TO SELL. The holder of commercial paper as collateral security for the payment of a debt can not, in the absence of special authority for that purpose, sell the security for the satisfaction of the debt.

Richardson v. Ashby.

2. ———: ———.  Such holder must retain and collect the security when it becomes due and apply the proceeds to the payment of his debt.

3. ———: ———: CONVERSION.  In an action on a note it appeared that at the time defendant executed it she pledged to plaintiff's intestate other notes as collateral security; that the deceased had repledged them as collateral on a loan made to himself, and that plaintiff could not produce them; that defendant admitted her liability on her note, and in a counterclaim prayed judgment against the estate of deceased for the difference between the value of the collateral notes and the sum due from her.  *Held,* that the repledging of the notes was a conversion, and that defendant was entitled to the judgment prayed for.

4. ———: ———: ———: COUNTERCLAIM.  A demand for the return of the collateral notes was unnecessary on the part of the defendant, before filing her counterclaim.

5. ———: ———: ———: ———: MEASURE OF DAMAGES.  The measure of damages for the conversion of the collateral notes was their value when converted.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1) As the pledgee came rightfully into possession of the property pledged, he is not liable for conversion until that element of right has been removed. Therefore, to lay the ground of an action for conversion, which action is based upon actual possession, or the right to the present possession, the lien of the pledgee must first be discharged, either by payment or tender.  *Donald v. Suckling,* L. R. 1 Q. B. 602; *Holliday v. Holgate,* L. R. 3 Exch. 299; Jones on Pledges, sec. 422; *Talty v. Bank,* 93 U. S. 321; *Jarvis v. Rodgers,* 15 Mass. 389; *Henry v. Eddy,* 34 Ill. 508; *Hopper v. Smith,* 63 How. Pr. 34; *Butts v. Burnett,* 6 Abb. Pr. (N. S.) 303; *Bank v. Bryce,* 78 Ky. 42; *Thompson v.*

*Bank,* 113 N. Y. 325; *Williamson v. McClure,* 37 Pa. St. 42; *Doke v. Bank,* 6 Iredell (N. C.), 309; 3 Sutherland on Damages, p. 488; Cooley on Torts [2 Ed.], p. 530, sec. 453; *Comnock v. Inst.,* 142 Mass. 342. (2) An unauthorized subpledge or illegal sale by the pledgee does not render the pledge contract void *ab initio,* and is, therefore, not of itself a conversion, but it is the refusal to redeliver the pledge after payment, or a tender of payment, and demand and refusal by the pledgee to return the collateral. Consequently, the cause of action for conversion does not arise until he discharges the lien by a payment or a tender, and demands a return of the pledge and the pledgee neglects or refuses to return it, and the refusal to return is the cause of action. *Butts v. Burnett, supra,* and cases above cited; Colebrooke on Collateral Security, sec. 344, page 457. (3) Conceding that the testimony shows (which it does not) that respondent offered to pay her note if appellant would produce the collateral, such offer is not equivalent to an actual tender. *Talty v. Bank,* 93 U. S. 321; *Lewis v. Mott,* 36 N. Y. 395; *McClintock v. Bank,* 120 Mo. 133; *Comnock v. Inst.,* 142 Mass. 342. (4) Nor is the tender excused by the fact that the pledgor's note is in the hands of her pledgee; the note has matured; its negotiable character is gone, and she could safely pay the amount or tender the amount to the second pledgee. *Talty v. Bank,* 93 U. S. 321; *Lewis v. Mott,* 36 N. Y. 395; *Williamson v. McClure,* 37 Pa. St. 402; *Jarvis v. Rodgers,* 15 Mass. 389. (5) The note in suit being due and the collateral being negotiable securities, and the conditions of the pledge not restricting Simpson to any manner of disposition, he had a right to subpledge the collateral, and if he did so for a greater amount than the sum which he advanced, such excess would be the only damage respondent could suffer, and is the proper measure of

damages in this case. Colebrooke on Coll. Sec., secs. 80 and 83; Story on Bailments, secs. 296 and 324; *Bank v. Voice,* 78 Ky. 42; *Thompson v. Bank,* 113 N. Y. 330; *Gross v. Emerson,* 23 N. H. 38; *Donald v. Suckling, supra.*

*Collins & Jamison* for respondent.

(1) When collateral securities are wrongfully assigned to a third person without authority of the debtor, the pledgor may be charged with the value thereof. *Hawks v. Hincliff,* 17 Barb. 472; *Nabring v. Bank,* 58 Ala. 204. (2) The lien of a pledge can not be separated, either from the possession of the pledge or from the debt, so that to make an effectual sale both must pass to the assignee. In the case at bar Simpson held Mrs. Ashby's note to him but parted with the collateral securities by pledging them to Mrs. Miller. *Whitney v. Peay,* 24 Ark. 22; *Johnson v. Smith,* 11 Humph. (Tenn.) 396; *Bullard v. Billings,* 2 Vt. 309; *Goss v. Emerson,* 23 N. H. 38; *Baily v. Colby,* 34 N. H. 29; *Stiger v. Bank,* 6 Fed. Rep. 569. (3) A sale of collateral securities without demand for payment of the pledgor or notice of the time and place of sale is improper and makes pledgee liable for value of the collaterals. *Chouteau v. Allen,* 70 Mo. 290; *Kilpatrick v. Dean,* 3 N. Y. Sup. Ct.; *Hope v. Lawrence,* 1 Hun. (N. Y.) 317; *Ainsworth v. Bowen,* 9 Wis. 348.

ROBINSON, J.—This action was instituted by appellant as public administrator of the city of St. Louis, having in charge the estate of Jeptha H. Simpson, deceased, to recover upon a promissory note payable to the order of Jeptha H. Simpson and signed by the defendant. Petition in the usual form.

The answer, after admitting the execution of the note in suit, avers that the defendant delivered to said

VOL. 132 mo—16

Simpson as collateral to secure the payment of her note, sixteen negotiable notes, secured by deed of trust on real estate, of the aggregate value of $10,000; that soon after the delivery of said collateral to said Simpson he unlawfully disposed of and converted the same to his own use and benefit, by rehypothecating same to secure a loan of $5,000, and that said loan had not been paid off by the said Simpson, but that same had been probated against his estate, and remains yet unpaid; that by the unlawful conversion of said collateral by said Simpson his representatives are now unable to deliver up to her said collateral when this defendant shall pay her note now in suit, and that defendant has offered to pay to plaintiff the amount of her note upon delivery to her of the collateral left with the said Simpson, but that on account of the wrongful and unlawful conversion of same by said Simpson, plaintiff is unable to deliver them to defendant, to her damage in the sum of $10,000. Wherefore she prays judgment against the estate of said Simpson, deceased, in the sum of $10,000, less the amount due on her note now in suit.

Plaintiff filed his reply denying the new matter set up as defense and counterclaim and asks judgment in accordance with the prayer of his petition.

Upon the issues as thus made up without further objection, the case was tried by the court without the intervention of a jury, resulting in a finding for plaintiff on his note for $3,708 and a finding for defendant on her counterclaim for the sum of $6,925 and an entry of judgment therein in favor of defendant for the sum of $3,217, and ordering same classified against Simpson's estate, to reverse which plaintiff has prosecuted this appeal.

At the close of the testimony plaintiff asked three declarations of law embracing his views of the case, all

of which were refused by the court; whereupon the court made the findings and rendered its judgment thereon as above indicated, without the giving of any declarations of law whatever, and, as none was asked by the defendant, we must conclude from the proof made and the result ascertained that the case was tried upon the theory that if plaintiff's intestate disposed of the collateral notes left with him by defendant in a manner not within the purview of any power delegated to him expressly, and not within the manner prescribed by the policy and rules of law for the disposition and use of such collateral when left with a pledgee as security for a prescribed debt, and that the pledgee was answerable as for a conversion of the collateral, and that as the wrongful conversion was a violation of the contract of pledge and was a part of the transaction that lead up to the making of the original indebtedness, and that as it was a wrong growing out of the same transaction that resulted in the making, signing, and delivery of the principal note, it was a proper matter of set-off against the note in suit, and that the true measure of damages to defendant by way of set-off, when the facts show as in this case that the collateral was not worth its face value, was its actual value at the time of the disposition of the same by the pledgee. This conclusively follows from the finding of the court on the undisputed facts as shown in evidence, which finding and conclusion we in this opinion indorse.

The following are the declarations of law asked by plaintiff, that were refused by the court, and for which this appeal was prosecuted.

"1.  The court declares the law to be, that although it may find from the evidence that the defendant pledged with the plaintiff's intestate the Hellman notes and deed of trust securing the same, and the said Totten notes and deed of trust securing the same, shown

in evidence, and although the court may further believe from the evidence that the said plaintiff's intestate, during his lifetime, and on or about, to wit: the twenty-second day of August, 1892, pledged the said collateral with one Henry Schmidt, for an amount greater than the sum borrowed from him by defendant, and to secure which said defendant pledged said collateral security with plaintiff's intestate, yet if the court further believe from the evidence that when defendant pledged said above described collateral notes and deeds of trust with plaintiff's intestate that there was no restriction in said contract of pledge prohibiting the said pledgee, plaintiff's intestate, from repledging said securities upon the maturity of the note given by defendant to plaintiff's intestate, said pledgee, then the verdict must be for the plaintiff, and the damages must be for the full amount of said note upon which suit is brought * * *.

"2. The court declares the law to be, that although it may believe from the evidence that the defendant pledged with plaintiff's intestate the notes shown in evidence made by the defendant and Totten to secure the payment of defendant's note upon which this suit is brought, and although the court may further believe from the evidence that the said plaintiff's intestate re-hypothecated said collateral to secure the payment of his own personal obligation in a sum greater than the amount which the defendant owed to him, the said pledgee, yet, if the court further believe from the evidence that before the filing of the answer of the defendant in this case, she did not pay or tender payment of the note upon which suit is brought and request or demand the redelivery of said collateral securities so pledged to plaintiff's intestate, as aforesaid, then the verdict must be for the plaintiff for the amount of said note, together with interest thereon from the date thereof. * * *

"3. The court declares the law to be, that if it finds from the evidence that the defendant is entitled to a verdict upon her counterclaim filed in this suit, then the same will not be greater in amount than the difference between the amount of her note upon which suit is brought,   *   *   *   and the amount which the said plaintiff's intestate received from his subpledgee, Henry Schmidt, upon the repledge of said property."

It will thus be seen that plaintiff's contention is, that if there is no restriction in the contract of pledge prohibiting the pledgee from repledging securities delivered to him, after the maturity of the principal debt, he could not be held accountable for his intestate's action in that behalf; at least in a suit by the pledgee against the maker on the original debt, when the damages claimed by defendant are sought to be recouped or set off against the amount ascertained on that debt. A proposition not true in a general sense as expressed in the declaration asked, and equally as untenable as applying to the facts of the case in hand.

Nonpayment of the original debt at the stipulated time does not work a forfeiture of the pledge either by the civil or at the common law. No title to or ownership in the collateral by forfeiture inures to the benefit of the pledgee by the maturity of the debt or by the lapse of time. The statute giving to a pawnbroker the right of absolute disposition of and ownership in, the pledge left with him as security for his debt "after the failure to pay the interest on the principal debt, or the debt itself, for sixty days after maturity thereof," does not apply.

Title and ownership of the pledge, when the subject of it consists of ordinary goods and chattels, remain in the pledgor; the pledgee taking only a lien on it, as a security for his debt, and is bound to keep and use it in a manner so as not to impair or destroy

its value, and to redeliver it on payment of the principal debt to the pledgor. While the relation of the pledgee to commercial paper delivered into his possession as security for a debt, gives him by reason of the peculiar character of the paper the apparent absolute ownership in, and right of disposition over, the pledge, and in fact the absolute right and power, so far as third parties taking same are concerned without a knowledge of the relation of the pledgee to the collateral, still the relation of the pledgor and pledgee to the pledge, as between themselves, and the duty of each to the other is not changed by reason of the power and authority of disposition involved in the indorsement of the collateral obligation by the pledgor, except, and only as to the one additional restriction which the law, in the absence of a contract to the contrary between pledgor and pledgee, has interposed to preserve the fruit of the pledge to the pledgor when this character of property is hypothecated, by forbidding its disposition by sale altogether, by compelling the pledgee to wait and collect the notes in order to apply their proceeds to the discharge and satisfaction of his debt.

Some of the courts of our country, however, hold to the rule that where great inconvenience and loss are threatened by reason of the long delay in the maturity of the collateral, the court on proper showing may order the collateral sold and its proceeds immediately applied to the payment of the original indebtedness, but no court has ever gone to the extreme of holding that the pledgee himself may dispose of this character of collateral without express authority from the pledgee—that the right of disposition by sale of the notes held as collateral is not one incident to the delivery and hypothecation of same.

Although there is some conflict in the courts of our country on the last proposition, we think the great

weight of authority, as well as the reason of the rule, sustains the position that the holder of the commercial paper as collateral for the payment of a debt can not, in the absence of a special power for that purpose, sell the security so pledged upon default of payment of the debt at public or private sale, with or without notice, as in the case of ordinary property, on timely notice, nor by order of court dispose of same. He is bound to hold and collect the security as it becomes due, and apply the proceeds to the payment of his debt. Otherwise the rights and interest of the pledgor of such paper must suffer ruinous sacrifices in many instances by permitting its sale at public outcry when no fixed and well determined market value is recognized on such paper, as in the case of personal property in general.

In this case, however, the collateral notes were disposed of by a rehypothecation of them by the pledgee to secure a five thousand dollars loan to himself, without authority from, notice to, or an accounting with the defendant, the original pledgor of the collateral, thus making this conversion complete, and defendant's right of action consummate.

There is nothing in plaintiff's contention, as made by his second refused instruction, that he is entitled to recover in full on his note in suit, unless the defendant, before the filing of her answer, paid or tendered payment of the principal note and requested or demanded the redelivery of the collateral. The obligations and duties of the pledgee and pledgor are mutual and reciprocal. While the pledgor must be ready and willing and offer to pay the original indebtedness before demanding a return of the collateral, the pledgee also when he demands payment on the original indebtedness must be ready and willing to return and redeliver to the pledgor the collateral left with him as security.

While pledgee could yet retain the collateral and demand a judgment against the pledgor on the principal indebtedness without an offer to surrender or redeliver the collateral, still, when, as in this case, there has been an admitted conversion of the collateral by the pledgee and a consequent right of action against him therefor, and while in this case the pledgor does not seek to avoid the force of a judgment against her on the original indebtedness, but admits its propriety, concedes that it ought to go, but asks further that she also be allowed judgment against the plaintiff by way of counterclaim, for injuries resulting to her growing out of plaintiff's intestate's violation of his agreement that formed a part of the transaction that culminated in the making and delivery of the obligation in suit, the question of a tender of payment is immaterial.

Defendant is not seeking to avoid judgment on the ground that a tender has been made of the original indebtedness; she concedes its correctness, and moved upon plaintiff for a counter judgment on a cause of action accruing to her arising out of the giving of the principal note sued on as the foundation of plaintiff's claim.

By the admitted wrongful act of plaintiff's intestate the plaintiff was incapacitated to perform the pledgee's part of the contract, that is, to return to the pledgor the collateral notes if tender of payment of the principal note was made. Why, then, was a general demand necessary on part of the pledgor; or why require the form of a tender which the pledgor had a right to make upon the condition that "when she should perform her part of the contract by paying to plaintiff the note signed by her, she would be entitled to exact of him a return of the collateral" when both plaintiff and defendant knew it would be an idle and meaningless ceremony,

in view of plaintiff's intestate's known previous disposition of the collateral?

The further point is made by appellant that if defendant is entitled to recover on her counterclaim that her damages should be limited to the difference between the amount of her indebtedness on the principal note, and the amount that plaintiff's intestate received from his subpledgee upon the repledging of the collateral which we think is also without merit.

While defendant might be able to recover, by proper proceeding, the collateral notes from plaintiff's intestate's pledgee on payment of the amount, these collateral notes were hypothecated to secure, and thus would be damaged by only the difference between the amount they were originally hypothecated to recover, and the amount secured by the second hypothecation, the law does not confine him to the hazard of such proceeding. In many cases the security hypothecated might not be found, or the parties holding same might not discover its whereabouts, and an action against the subpledgee be unavailing on account of insolvency and for numerous other reasons defendant's collateral might be entirely lost to her, and in consideration of which the law holds the pledgee liable, as for a full conversion and appropriation of the collateral as soon as disposed of, and the pledgor's damages is the difference between the amount due on the principal debt and the value of the collateral at the time of the conversion as declared by the trial court in its finding. Having two remedies for an injury the defendant may pursue either, and having pursued the one charging plaintiff as for a full conversion her damages have been properly ascertained. No error was committed by the trial court in refusing defendant's instructions asked.

· The judgment of the circuit court will be affirmed. BRACE, C. J., and MACFARLANE, J., concur. BARCLAY, J., concurs in result.