HUGH C. NEVIUS, Appellant, v. GEORGE T. MOORE.

Division Two, June 8, 1909.

1. **EQUITY: Instructions.** It is wholly immaterial, so far as equity counts in a petition are concerned, whether instructions asked were correct declarations of law, or whether they were properly or improperly refused.

2. ———: **Deference to Chancellor: Questions of Fact.** The appellate court in a suit in equity will review the testimony and draw its own conclusions as to the rights of the parties. But where the testimony is conflicting and disputed questions of fact are to be settled, the appellate court will defer in a large measure as to such disputed questions, to the findings of the chancellor, who has a superior advantage to observe the conduct of the witnesses and weigh their testimony.

3. **NOTE: Indorser's Liability: Limitations.** If the notes themselves were barred by the ten-year Statute of Limitations at the time suit was brought against the indorser, he is not liable.

4. ———: ———: **Presentation and Demand: Knowledge.** The payee of a note who indorses and delivers it to a purchaser before maturity, is not liable as indorser for its payment un-

less at its maturity it is presented to the maker, demand of payment made, and notice of refusal of payment given to the indorser. And the fact that the indorser notified the maker that the note was due is not such a presentation, demand and notice as the law requires.

5. ———: ———: ———: Waiver: Promise to Pay. In order to hold a payee of a note liable as indorser, on the ground that a letter written by him, in which he asks the holder to bear with him a little longer and assures him that he will do all in his power "to settle" at the earliest possible moment, constituted a waiver of presentation, demand and notice of refusal to pay, it is essential that the indorser at the time of writing the letter, had knowledge of all the facts and knew that the note had not been presented to the maker, demand of payment made, and that the maker had refused to pay. The indorser's liability to pay is only conditional, and in order to convert it into an absolute independent agreement, it is the duty of the party relying upon a waiver to prove that it was made with full knowledge of the facts.

6. ———: ———: ———: ———: Must Be Pleaded. Where plaintiff in his petition, suing defendant as indorser of a note, alleges presentation at maturity to the maker, demand of payment and notice to the indorser of the maker's refusal to pay, he cannot prove the indorser waived such presentation, demand and notice, in the absence of proper averments of waiver. And an allegation that "the defendant in the year 1898 admitted in writing his liability to plaintiff for the amount of said note and promised to pay the same, but has failed to do so," does not tender the issue of waiver; and even if it did, the petition would be duplicitous, in the face of the prior charge that presentation and demand were made.

7. PLEDGE: Reciprocal Obligations. The obligations and duties of pledgor and pledgee are mutual and reciprocal. The pledgor must be ready and willing and offer to pay the indebtedness before demanding a return of the collateral. The pledgee when he demands payment of the original debt must be ready to return and deliver to the pledgor the collateral left with him as security.

8. ———: No Offer to Pay: Prayer for an Accounting. Unless the pledgor, in his petition or otherwise, offers to pay his debt to the pledgee, to whom he delivered as collateral security certain notes secured by a deed of trust, which was foreclosed by the pledgee and the property deeded to him, he cannot demand that the title be decreed out of the pledgee into him. And a request in the pledgor's petition that an account-

ing be taken between him and the pledgee, and that his claim against the pledgee be set off against the notes made by him to the pledgee and that he have judgment against the pledgee for the balance, is not an offer to pay or a tender to redeem, where the facts show that the pledgee was not indebted to the pledgor, at the institution of the suit.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans*, Judge.

AFFIRMED.

*J. C. Rosenberger* for appellant.

(1) The finding upon counts one and two should have been in favor of plaintiff. 1. Moore absolutely disregarded the terms of the letter transmitting the pledged notes, which letter constitutes the contract of pledge and which provides that the pledge of the notes should be only temporary and that the notes should be held only until foreclosure could be made, title taken in Nevius' name and deed of trust given by him. For Moore to proceed to foreclose and take title in his own name and hold it as security was a gross violation of the pledge contract and presents a case for equitable relief similar to that given in Hagan v. Bank, 182 Mo. 319. Construction Co. v. Hayes, 191 Mo. 250; Richardson v. Ashby, 132 Mo. 238; Bank v. Richardson, 156 Mo. 270. 2. His taking of the title to these lots in his own name, his failure to call upon Nevius for the foreclosure expenses, his failure to demand payment of Nevius' notes, his failure to ask Nevius to execute the deeds of trust, and his own statement that upon Nevius' failure to pay his notes on their maturity, without, however, any demand being made he treated the notes as his own, show conclusively that after Moore had got into his own possession these notes bearing his endorsements, the evidence of his liability, and had got the title to these lots tucked away in his own name, his ulterior object had been accomplished.

1 Pom., Eq. Jur. (3 Ed.), sec. 186. 3. No tender
should be required of plaintiff as a condition to main-
taining this action. In giving plaintiff the remedy
he seeks in this case there can be no legit-
mate contention that plaintiff should have ten-
dered to defendant the sum of $800 advanced
to him at the time that the McClellan notes
were pledged or that plaintiff has waived his
rights upon the indorsements by pledging the
notes with Moore. Moore was never a lawful pledgee
of these notes. Nevius never supposed that he was
borrowing money of Moore, his debtor, and never sup-
posed he was pledging notes to him. Jones on Pledges,
sec. 564; Mead v. Bunn, 32 N. Y. 275. 4. Even if
Moore had not gotten the notes by fraud and had been
the lawful pledgee thereof, there would have been no
obligation on the part of Nevius to offer to redeem
them by paying Moore the $800, for the further rea-
son that the law does not require one to do a useless
act. It being admitted by defendant that by his own
misconduct he was unable to produce the notes alleged
to have been pledged it would have been a useless
and an idle ceremony for plaintiff to have offered to
redeem them. Richardson v. Ashby, 132 Mo. 238.
(2) Defendant should not be allowed to escape his
liability as endorser of the notes by reason of the al-
leged failure, as it is claimed, of plaintiff to show
due presentment, demand and notice of dishonor of
the notes. 1. It was both alleged and proved that
the notes when due were presented to and payment
demanded of the makers and the proof showed by
defendant's own admission that this had been done
by defendant himself. 2. Even if there had been no
such proof, the showing made of Moore's written,
unconditional promises to pay the notes and recogni-
tion of his liability, dispenses with all further proof
of demand, notice, etc. Mense v. Osborn, 5 Mo. 544;
Dorsey v. Watson, 14 Mo. 59; Harness v. Daviess

Nevius v. Moore.

County, 46 Mo. 357; Falkner v. Falkner, 73 Mo. 327; Daniel, Neg. Inst., 1157.

R. E. Ball for respondent.

(1)   In any event there could be no action here, except as on lost instruments. This, of course, is aside from whether defendant is really liable on these notes or on any of them. The undisputed proof discloses a case of a suit on lost instruments in which plaintiff has not complied with the statute. His pleadings and the proof do not correspond. He alleges that all of these notes are in existence, and that defendant has them. He does not plead as upon a lost instrument, or assert the loss of the notes, as the fact was, as a reason for their non-production. He fails utterly to show what he asserts. He makes no proffer of the bond without which, under the statute, he could have no judgment. R. S. 1899, secs. 642, 743.   (2)   Plaintiff is not the owner of the McClellan notes. As to these four notes, there is no possible doubt that plaintiff could not maintain any action on them either at law or in equity, against the defendant, or against anybody else. If he had not waited for eleven or twelve years before attempting to take any action on these notes, he could not, after pledging and reassigning them to defendant, whether they were for a loan from defendant personally or for a loan from a third party through plaintiff, as the fact was, maintain any suit even against the maker and primary debtor until he redeemed and took up the notes. He is not the owner or holder of the notes. He reassigned and pledged them as collateral for a debt which he has ignored, on which he has paid no interest, and which he has neither offered to pay nor shown any disposition to pay. Unless it is perfectly immaterial whether plaintiff is the owner and holder of the paper, he cannot maintain an action on it, and

certainly cannot against the pledgee.  (3), The notes
sued on were all barred by the Statute of Limitations
at the time the action was begun.   (4)   There is no
evidence of any waiver on defendant's part, either
of the Statute of Limitations, or of the failure to
make demand, and protest on the notes, and notice
of their dishonor. .The law is quite clear that there
could be no waiver, no matter if defendant's letter of
February 10, 1898, is properly construed by counsel
for plaintiff (which we deny), to the effect that that
letter contained within the meaning of the law an un-
conditional promise to pay these notes.   It must be
true under the law, before any such effect could be
given to the letter:   (a)   That it was an uncondition-
al promise to pay these notes; and (b) That defen-
dant knew when he made that promise that he was
released.   Long v. Dismer, 71 Mo. 453; Dyas v.
Hanson, 14 Mo. App. 363; Thresher Co. v. Pierce,
74 Mo. App. 676.   (5)   The only possible point on
which plaintiff could recover on any of the notes
would be that by defendant's letter of February 10,
1898, defendant waived the Statute of Limitations,
and waived demand and protest of the notes, and
this alleged waiver plaintiff does not plead.   Pier v.
Heinrichoffen, 52 Mo. 333.   (6)   Defendant's letter
of February 10, 1898, does not contain an unconditional
promise to pay, and is improperly so construed by
plaintiff's counsel.   Borradile v. Lowe, 4 Taunt. 93;
Kelly v. Brown, 5 Gray 110; Parks v. Smith, 155 Mass.
33; Thornton v. Wynn, 25 U. S. 187.

FOX, J.—This appeal is from a judgment of the
Jackson Circuit Court in favor of defendant.

On June 26, 1902, the appellant, Nevius, filed his
petition against the respondent, Moore, in the circuit
court of Jackson county, Missouri.   Summons was
issued and served on Moore the same day.   An
amended petition was filed on the 27th day of January,

1903. The amended petition consisted of seven counts, the two first being equitable and the last five being actions at law on promissory notes. The first count was based on four promissory notes executed by Eliza J. McClellan to George T. Moore, the respondent, on August 9, 1887, payable three years after date, secured by four separate deeds of trust on lots six, seven, eight and nine in block one in West Ridgeway, a subdivision of land in Jackson county, Missouri; the assignment of said notes to appellant, Nevius, by Moore, before their maturity; their reassignment to Moore as a pledge for loans, after maturity; the foreclosure of said deeds of trust by Moore while holding said notes as a pledge, and a general charge of fraud and misrepresentation by Moore for the purpose of relieving himself of his liability as indorser. It is alleged that at the maturity of said notes they were presented to the maker, demand of payment made, and notice of refusal of payment given to Moore as indorser. It was alleged in the original petition that interest was paid on said notes up to and including February 9, 1892, and in the amended petition that it was paid up to and including August 9, 1892; that in 1898 Moore admitted his liability on said notes as indorser and again promised to pay them; that Moore was agent of Nevius and as such took advantage of him and deceived him; that he borrowed money from Moore on the security of said notes as collateral temporarily until said deeds of trust could be foreclosed. Fraud and misrepresentation are charged against Moore in making the loan to Nevius and pledging the McClellan notes. It is charged that Moore represented that he was insolvent and that he would have to get the money from some other person, when as a matter of fact the money furnished was Moore's. It is charged that Moore converted the McClellan notes to his own use by having the deeds of trust foreclosed and title taken in

his name, and that he was guilty of fraud in not giving Nevius notice of the time and place of sale and the fact that he had bought the lots at the sale. Appellant prays an accounting; that after giving Moore credit for the sums loaned him, he have judgment for the balance; that the title to the lots be decreed in appellant and that Moore be required to yield up the McClellan notes.

The second count of the amended petition is based on a note dated January 15, 1889, given by Joseph J. Baughman to respondent, George T. Moore, payable three years after date, secured by a deed of trust on lots nine, ten and eleven, block fifty-two, in Centropolis, a sub-division of land in Jackson county, Missouri, which note was assigned and transferred to Nevius before its maturity. The allegations of this count are in all things similar to those of the first count, except that this note was not pledged to secure a loan; alleges that interest was paid on said note up to and including July 15, 1892, and alleged in original petition to have been paid up to January 15, 1892; alleges that Moore had the deed of trust foreclosed and purchased the property in his own name. Prayer, similar to that contained in the first count.

The third, fourth, fifth, sixth and seventh counts are actions at law against Moore as indorser, each based on one of the foregoing five promissory notes. Each count alleges presentment, demand, refusal to pay and due notice to Moore as indorser.

Answering the various counts of appellant's petition respondent admitted the execution of the notes, their ownership by Nevius, the foreclosure of the various deeds of trust, etc. Denied that he practiced or contemplated any fraud against Nevius. Offered to deed the Baughman property to Nevius, which deed was made and accepted. Further offered to deed to

Nevius the McClellan lots when he redeemed his notes amounting to eight hundred dollars; denies his liability on all notes as indorser and otherwise; pleads the ten-year Statute of Limitations as a bar to a judgment on the notes against him.

This sufficiently indicates the nature and character of the pleadings as well as the issues upon which this cause was submitted to the trial court.

The evidence developed upon the trial was substantially as follows:

On August 9, 1887, Eliza J. McClellan executed and delivered to George T. Moore her four promissory notes for four hundred dollars each, payable three years after date with interest at the rate of ten per cent per annum from maturity. Semi-annual interest coupons amounting to $96 were attached. To secure the payment of said promissory notes four separate deeds of trust were executed by said McClellan, and one R. L. Yeager was made trustee therein. These deeds of trust were duly recorded on September 29, 1887, in the recorder's office of Jackson county, Missouri.

On January 15, 1889, one Joseph J. Baughman executed and delivered to George T. Moore a note for $750, payable three years after date, with interest at the rate of eight per cent per annum, payable semi-annually. This note was also secured by deed of trust on certain lots of ground made to R. L. Yeager, trustee, and duly recorded in the recorder's office in Jackson county, Missouri, on the 18th day of January, 1889.

Afterwards and before the maturity of the five notes above described, they were purchased by the appellant from the respondent, Moore. Nevius claims that they were indorsed on the back by Moore. Moore claims that he does not remember whether he indorsed them or not. Nevius at the time lived in the State of New York and Moore in Kansas City, Missouri.

Through one W. B. Thayer, Nevius was put in correspondence with Moore with a view of investing some money in Kansas City.  On September 13, 1889, W. B. Thayer sent to Nevius notes which had been sold to him by Moore, amounting to $4,345.23; the Baughman note was embraced in the list.  The McClellan notes were forwarded to Nevius at a later date, but the date is not fixed.  Quite a number of letters passed between Nevius and Moore concerning the notes in suit, but a great number were not offered in evidence because they could not be found.  On October 10, 1891, Moore wrote to Nevius (in answer to a letter which is not in evidence) in which he stated that regarding the McClellan notes he did not see any immediate prospect of their being paid; that Mrs. McClellan had her money in property and could not pay the notes until she disposed of some of the property, and that there was no sale of real estate at that time.  Also used this language: "There would be no objection to your using the notes as collateral, but you had better explain to the party to whom the notes are given that the interest will be kept up on the notes, but not to expect the principal too soon.  They will come out all right if they are not pushed to the wall."

As to the interest on the Baughman and McClellan notes Nevius testified: "The interest on these notes, together with others, was being collected semiannually and paid to me by Mr. Moore."  A letter from Moore to Nevius, dated Ocala, Fla., Mar. 10, 1892, remits the interest due on the Baughman note up to January 15, 1892, and on the McClellan notes up to February 9, 1892.  No other letter was introduced showing a remittance of interest due on the notes for a later date.  On January 3, 1894, one Norton Thayer, writing to appellant from Kansas City, stated that the interest seemed to have been paid on McClellan notes recently and thought it quite likely some adjustment could be made and sufficient payment

got to put the loan in good shape. Nevius, in his deposition, testifying as to interest on the Baughman note, stated that the interest was paid up to and including July 15, 1892, and that on the McClellan notes, the interest had been paid up to and including August 9, 1892. He does not state how or through whom this last interest payment was made, but does state elsewhere that all the interest on the notes in question was collected and sent to him by Moore, the respondent.

Respondent testified that he collected the interest on the Baughman note and McClellan notes remitted in the letter of March 10, 1892; this was interest due in January and February, and that after that date he was absent in Florida for two and a half or three years, with the exception of about one month when he attended the World's Fair at Chicago. He, however, says he collected no more interest on the notes after March 10, 1892. There were interest coupons attached to the McClellan notes, which coupons were sent to respondent by appellant for collection, and he states that he never had the notes in his possession during the time that he collected interest, but that what interest he collected on the Baughman note he gave a receipt for. Respondent also states that he collected interest for a great many other persons, as well as for appellant, and that he collected all the interest on the notes in suit up to the time of default in the payment of principal. In the original petition filed by appellant in this cause it was alleged that the interest due on the McClellan notes was paid up to and including the 9th day of February, 1892; the amended petition changed this date to August. In the original petition it was alleged that the interest on the Baughman note was paid up to and including January 15, 1892, but in the amended petition this date was changed to July.

On the question of the indorsement of the Baughman and McClellan notes by the respondent, Mr. Yeager, trustee in the deeds of trust, testified that when the McClellan notes and Baughman note were delivered to him to be foreclosed they were indorsed by Moore, but whether without recourse he could not remember. Appellant testified that the Baughman notes were indorsed by respondent, and that also the McClellan notes were indorsed "George T. Moore," over which had been written "without recourse," through which last words a pen had been drawn canceling them. Respondent says that he probably indorsed the notes, but he does not remember in what shape. He testified that all the notes in question were payable at the National Bank of Kansas City. The deed of trust offered in evidence showed the Baughman note payable at this bank. The evidence shows that neither appellant, respondent nor any one else ever presented the Baughman or McClellan notes to the makers or to the National Bank of Kansas City and demanded payment thereon. Respondent does testify that he probably notified McClellan and Baughman of the fact that their notes were due, but he did not have the notes with which to make formal demand of payment. Appellant offered no evidence showing a presentment, demand for payment or notice to respondent as indorser. Respondent says his rule was to notify parties when notes became due, whether he had the notes or not, and that he no doubt did so as to the Baughman and McClellan notes; says that appellant never claimed liability against him on account of his indorsing of the notes, but that he wrote a great many letters about the property and making inquiry as to whether or not "we could help him."

The evidence shows that all the notes in question remained in the hands of appellant or someone else in New York until the McClellan notes were pledged for

a loan and until the Baughman note, in 1901, was sent to respondent for the purpose of having the deed of trust foreclosed. None of these notes have been seen or accounted for since they were placed in the hands of Mr. Yeager, trustee. The trustee testified that he received the notes, but remembered nothing further about them; stated that he had made diligent search for them among his papers, but they could not be found. Respondent states that he gave the notes to Mr. Yeager and that he had not seen them since, although he made diligent search for them everywhere he thought they might be found.

On the question of Moore's agency for Nevius in looking after his investments in Kansas City, the evidence shows that a Mr. Thayer, in September, 1889, when he sent a batch of notes to Nevius, among which was the Baughman note, advised Nevius to have Moore collect the interest on them, as he knew all about them. Moore wrote frequent letters to Nevius advising him of the probability of collecting the notes, and especially in October, 1891, he wrote saying that he saw no immediate prospects of collecting the McClellan notes, and further advising him that there was no sale for property. Nevius testified that as to the collection of interest on these notes he relied entirely on Moore. In February, 1893, Moore wrote to Nevius telling him in relation to the Baughman and McClellan notes that they were about to make a sale of some of the property and if they did that in all probability they would take the notes up and hold them; this last letter was written from Ocala, Florida. Also in the fall of 1893 Moore wrote Nevius from Florida telling him that if he was in Kansas City he would attend to looking after his interests there *gratis,* also telling Nevius that he was then utterly unable to help him out and referred him to Mr. Norton Thayer, who would look after his interests there. Nevius had Thayer and the father of respondent pay

taxes for him several times, but the respondent never attended to those matters. In December, 1893, Norton Thayer wrote to Nevius advising him to pay taxes on the lots described in the deeds of trust, and also again Thayer wrote Nevius in January, 1894, sending him the amount of back taxes; Thayer in the last letter stated that in his judgment the McClellan lots were good for the loan. Thayer wrote Nevius twice during the year 1894 concerning taxes on the lots and sent him a receipt for back taxes. In January, 1895, Thayer again wrote Moore concerning the lots and their value, telling him that there was no sale for property at that time and that the lots would not sell even if he had title. In September, 1895, Moore, who seems then to have been in Kansas City, answering a letter from Nevius, which is not in evidence, informed Nevius that Baughman was solvent and that his note could be collected for him; that he resided in Harrisburg, Pennsylvania; also advised Nevius to employ certain attorneys to help him, who held another note against Baughman; also in the same letter he told Nevius that property was looking up, that he thought Mrs. McClellan had property covered up and that within a short time she could be made to pay; also stated that he would do what he could to prevent Nevius losing anything on the notes he sold him; advised Nevius that he did not think that was the right time to push Mrs. McClellan. On January 11, 1900, Moore sent Nevius a draft for two hundred dollars, to cover a loan of January 5th, of that year; also advised that his note for four hundred dollars was due on January 2nd, and that he had arranged to extend it on payment by Nevius of the interest due of $24; Nevius says this was the last letter he received from Moore. Nevius says that through all these transactions he relied upon Moore's representations and considered him as acting for his interests; that Moore knew the circumstances and the people and was gener-

ally better informed than he was. Norton Thayer testified about a letter dated January 3, 1894, and written to him by Nevius; when asked if he had any conversation with Moore said that he did not think he had, because Moore was not in town at that time and had not been for several years. Moore says that he did not see or have possession of either the Baughman or McClellan notes after they were sold to Nevius until the Baughman note was sent him to be foreclosed, and the McClellan notes were pledged to him for a loan.

Both Nevius and Moore testified that neither of them retained copies of letters written to the other. Much of the correspondence that passed between them, it is clear from the evidence, was not introduced, and according to the testimony of the parties could not be because the letters were lost or misplaced.

On the question of the asserted promise to pay the notes in question by Moore after their maturity, the following evidence was adduced:

In a letter to Nevius from Moore, dated February 11, 1893, he stated that in regard to the Baughman and McClellan notes they were about to make a sale of some property and that if so in all probability "we will take the notes up or hold them ourselves." In a letter written by Moore to Nevius dated Ocala, Florida, November 17, 1893, Moore said: "I am sorry to say that as you are to hear that I am utterly unable to help you at present," and then refers Nevius to Norton Thayer to look after the taxes for him. In a letter from Kansas City, September 17, 1895, Moore said to Nevius: "Let me assure you I will do what I can to see that you do not lose anything on the notes we sold you. There is a time for everything but I do not think this is the right time to push Mrs. McClellan. Think you can make more by waiting a little longer." The letter most relied upon by appellant as a promise to pay these notes after their maturity, is the one dated Kansas City, February 10, 1898, written by re-

spondent, Moore, to Nevius; it is an answer to a let-
ter written by Nevius to the father of respondent;
among other things the letter contains the following
extracts: "I admit that you have been very patient
in regard to the Baughman and McClellan notes, which
will result in your advantage in the end. A foreclos-
ure, as you say, would be expensive and I may add
you would not better yourself thereby. A judgment
against me, I am sorry to say, would be worth very
little to you as I am now overwhelmed with judg-
ments." Respondent continues in his letter to tell
that after the collapse he went to Florida and there
lost heavily; then he went to Texas and worked on a
cattle ranch; he then goes on to outline his financial
ventures and heavy losses, both in Florida and in Tex-
as, at the same time giving to Nevius a history of his
father's financial dealings and heavy losses; then fol-
lows this language: "So far as I am concerned I am
still hopelessly in debt. I am confident he will help
me out just as soon as he is able to do so, which I
feel sure will be in the near future. So in this way
I expect to settle most of my debts on some equitable
basis. There is one thing certain, Mr. Nevius, and
that is this, that those who have borne with me and
have been patient are those who will be settled with
first. Do not look upon this as a threat, but put your-
self in my place, then whom would you favor, those
who have made all sorts of threats against you, have
taken judgments against you, thereby destroying your
credit and making it impossible to give a good title
to any property which you might have an opportunity
to sell, or those who in their better judgment have
borne with you and had thereby so far as they were
concerned afforded you an opportunity of regaining
your lost fortune? I have put this matter clearly
before you and trust you will appreciate my position.
No doubt it has worked a hardship upon you but I
would not have had it so could I have helped it." Re-

spondent closes his letter with these words: "So trusting you will bear with me a while longer and assuring you I will do all in my power to settle these matters at the earliest possible moment, and that threats of foreclosure and judgments will not bring this about any sooner."

As to the Baughman note Moore wrote to Nevius as early as September, 1895, advising him of the residence of Baughman in Pennsylvania, and advising steps to collect same against Baughman, because he was then solvent. Again in February, 1897, Moore wrote to Nevius in relation to this note, stating to him that if he had not begun proceedings against Baughman he should do so. A few days later Moore wrote again to Nevius telling him that an action against Baughman on a companion note for $750 had been successful, that he had paid the judgment, and again urged him to proceed against Baughman by placing the note in the hands of the firm of attorneys he gave, for collection. On January 9, 1899, Moore wrote to Nevius to send the Baughman note to Kansas City so that the deed of trust could be foreclosed, suggesting that he buy the property in and then bring suit against Baughman on the note. Again in December, 1899, Moore wrote to Nevius in which he strongly advised that he send the Baughman note out and have the deed of trust foreclosed; further advised him to bid the property in and gave reasons why he thought it would increase in value. Later in December, 1899, he again wrote Nevius concerning the Baughman note and advised a foreclosure of the deed of trust and also informed Nevius that he thought Baughman was good. Evidently the Baughman note was sent to the firm of lawyers suggested by Moore; on June 6, 1901, they returned the note to Mr. Moore. The evidence shows that the Statutes of Limitations in the State of Pennsylvania against a promissory note is six years and during all the time Nevius owned the Baughman

note he, Baughman, resided in Pennsylvania and that he was advised of this fact before the note became barred. On January 4, 1899, Nevius wrote to Moore that he declined a settlement of the Baughman note made through the firm of attorneys who held the note for collection, and stated that he preferred to foreclose. During the trial of this case in the circuit court a deed to the Baughman lots which had been conveyed to Moore by the trustee at the sale was tendered to the appellant and was accepted by him.

Nevius testified that in January, 1899, he borrowed from Moore four hundred dollars, for which he pledged two of the McClellan notes; that in December, 1899, he borrowed two hundred dollars more and pledged the third McClellan note; and that in January, 1900, he borrowed two hundred dollars more from Moore and pledged the fourth McClellan note. Each of these notes was pledged by the following writing: "These notes are to be held by you as collateral security for a loan of $—— until such time as the property can be foreclosed, when I will give you a mortgage on said property should I buy it in." The letters containing the above pledge were addressed to Moore. In December, 1898, Moore, in answer to a letter from Nevius, which is not in evidence, offered to buy the McClellan notes from Nevius or to get some one to furnish money and stated the amount to be eight hundred dollars; also stated that if he effected a sale of the property within a year or two he would give Nevius all over eight hundred dollars less expenses, taxes, etc. Nevius declined this offer and then made application to Moore to borrow the money above referred to. In making the loans made by Moore to Nevius notes were executed by Nevius to Moore for the aggregate sum of eight hundred dollars, which were secured by pledges of the McClellan notes and deeds of trust. Moore represented to Nevius that he did not have the money, but he would get it from

William H. Reid or some third person.  He first wrote
to Nevius to make the notes payable to Reid, but after-
wards because the pledge agreement was made in the
name of Moore he returned the notes and had them
made in his name.  After the McClellan notes were
pledged for the loan of eight hundred dollars Nevius
wrote to Moore and asked him if he proposed to fore-
close at once or wait until spring with the possibility
of getting full price.  The three notes made by Nevius
to Moore, one dated January 2, 1899, for four hundred
dollars, one dated December 1, 1899, for two hundred
dollars and another dated January 5, 1900, for two
hundred dollars, were all payable one year after date
at the First National Bank of Kansas City, Missouri;
no part of these notes, either principal or interest,
has ever been paid or tendered by Nevius.  Just prior
to making these loans Nevius wrote to Moore and
asked him if he could not do something to clean up
his loans in Kansas City, that his financial condition
was not good and that he had done nothing but lose
money; this letter seems to have been the one which
drew from Moore the proposition which he made to
Nevius.  After the last loan was made to Nevius it
seems that Nevius did not write Moore again either
concerning his personal notes or the Baughman and
McClellan notes.  Moore says that Nevius had pledged
these notes as collateral for the loans he had gotten
for him; says he paid no attention to the notes, paid
no interest nor ever wrote or took any interest ap-
parently, and that he simply had them foreclosed.
Respondent, Moore, while on the witness stand, and
through his attorney, as well as by the pleadings,
offered to deed the McClellan lots to Nevius if he
would pay  the loan  procured for him by Moore,
amounting to eight hundred dollars, and interest.
Moore testified that when these loans were made to
Nevius he did not have the money, that Mr. Reid,
his brother-in-law, had agreed to let him have the

money, and he was under the impression that he got it from Reid until he looked over some old checks and found that he got the money from his wife. The notes made by Nevius, as well as the collateral placed by him with Moore, remained in Moore's possession and never went into the possession of Reid or Moore's wife, except as they may have been held by him for his wife.

As to the foreclosure of the deeds of trust given to secure the Baughman as well as the McClellan notes, the testimony shows that the Baughman deed of trust was foreclosed at the request of Nevius upon the advice of Moore that it ought to be foreclosed. The McClellan deeds of trust were foreclosed because, as Moore claims, the notes given by Nevius to him aggregating the sum of eight hundred dollars had become overdue and that Nevius did not pay or offer to pay them or any part of them. The McClellan notes and deeds of trust were then in his hands as a pledge to secure the payment of the Nevius notes. Under the contract of pledge Moore had the right to foreclose the deeds of trust when the Nevius notes became due. Moore claims that he instructed the trustee, Yeager, to deed the Baughman property to Nevius; he also claims that he did not know this property was deeded to him until his attention was called to it by Nevius's attorney. Notice of these sales was given in the manner provided by the deeds of trust; in fact, no point is made nor is any fraud charged in the manner of making the sales, except that Moore did not notify Nevius of the fact that the sales were to be made, nor the time, nor did he afterwards notify Nevius that the sales had been made; in fact, there seems to have been no correspondence passing between Moore and Nevius after the year 1900. Expenses of these sales, amounting to about eighty-five dollars, were paid by Moore and he never asked Nevius to pay any part of them. At the sales each lot under sep-

arate deeds of trust was sold for one hundred dollars and no money was paid except the costs of making the sales. The testimony tends to show that the balance, after deducting the costs, was credited on the notes.

This is a sufficient indication of the nature and character of the testimony upon which the issues in this case were submitted to the trial court. At the close of the testimony the cause was submitted to the court and the finding and judgment rendered upon all the counts in the petition were in favor of the defendant. A timely motion for new trial was filed and by the court overruled, and from the judgment rendered in this cause plaintiff in due time and proper form prosecuted his appeal to this court and the record is now before us for consideration.

## OPINION.

The record in this cause discloses that at the close of the evidence the plaintiff requested the court to declare the law upon the issues presented by the pleadings, as follows:

First. That the plaintiff was entitled to a judgment on each ground of the petition.

Second. That the ten-year Statute of Limitations had not run against the notes.

Third. That the letter of February 10, 1898, had the effect of avoiding the Statute of Limitations.

Fourth. That said letter dispensed with the proof on the part of the plaintiff of any demand for the payment of the notes in suit, as well as any notice and protest by reason of such non-payment.

Fifth. That it was not necessary for plaintiff to exhaust his remedy at law against McClellan and Baughman before proceeding against defendant.

Sixth. That if defendant procured from his wife the money loaned to plaintiff, the pledge of the Mc-

Clellan notes was void unless they were actually delivered to his said wife.

Seventh. That the defendant was not the pledgee of the McClellan notes, nor the legal holder thereof.

All of the declarations of law requested by the plaintiff, as indicated, were refused by the court. The trial court manifestly tried this case upon the first two counts, or, in other words, the equity counts as contained in the petition. Obviously the trial was had upon the equity counts for the reason that if appellant was not entitled to recover upon either of those counts clearly he could not recover on any of the others. It is wholly immaterial so far as the equity counts of the petition are concerned whether the instructions were correct declarations of law, or whether they were properly or improperly refused. However, in the consideration of this cause we shall undertake to treat of and announce the rules of law applicable to all of the counts embraced in the petition.

In equity cases this court will exercise its right to review the testimony as disclosed by the record and draw its own conclusions as to the rights between the parties. However, in reviewing the testimony disclosed by the record we are not unmindful of the well-recognized rule that where the testimony is conflicting and disputed questions of fact are to be settled, by reason of the superior advantage possessed by the chancellor to observe the conduct of the witnesses and to weigh their testimony, the appellate court will defer in a large measure to the finding of the trial court upon such disputed questions. [Harris Banking Co. v. Miller, 190 Mo. 640.]

## I.

While the record before us does not in terms so disclose, it is obvious that the trial court entertained the views that the causes of action stated in all the

counts of the petition were barred by the ten-year Statute of Limitations at the time of the institution of this suit, in the circuit court of Jackson county. Whether or not this was true depends upon the last payment of interest. The McClellan notes became due on August 9, 1890, and the Baughman note became due on January 15, 1892. This action was begun by the filing of appellant's petition of June 26, 1902. The interest on these notes was payable semiannually. It is conceded that the interest was paid in full on the McClellan notes up to February 9, 1892, and on the Baughman note up to January 15, 1892. On March 10, 1892, respondent by a letter written from Ocala, Florida, remitted to appellant the interest due and collected on said notes up to the dates named in January and February, 1892. Appellant in his deposition testified that the interest was paid on the McClellan notes up to and including August 9, 1892, and on the Baughman note up to and including July 15, 1892; he further testified that all the interest collected on these notes was collected by respondent. The evidence further shows that from the early spring or winter of 1892 respondent was in the State of Florida, and remained there for two and a half or three years, during which time Moore testified he did not visit Kansas City nor collect any interest nor have anything further to do with these notes. The statement of appellant that the interest was paid up to July and August, 1892, is not corroborated by any letter of remittance and is positively contradicted by the respondent, and this contradiction by respondent is corroborated by the undisputed fact of respondent's absence from Kansas City at the time the appellant states the interest was paid. Moreover, appellant alleged in his original petition the last payments of interest to have been the amounts due in January and February, 1892. The circuit court determined this issue in favor of respondent. Owing to the fact that

the chancellor had the witnesses before him, whose conduct and manner of giving testimony he could observe and weigh, we are inclined to defer to his finding on this question and are further of the opinion that the evidence preponderates in favor of his view.

## II.

It is apparent from the evidence disclosed by the record that there can be but one reasonable inference drawn respecting the sale and transfer of the notes in question to the plaintiff, Nevius, and that is, that the defendant indorsed said notes before maturity by writing his name on the backs thereof. Under these circumstances, in order to hold Moore liable as indorser, it was necessary for Nevius to make presentment and demand of payment of the notes at their maturity and to notify Moore of the failure of the makers to pay. The evidence discloses clearly that no proper presentment and demand of payment was made nor was notice given to respondent. In fact, at the maturity of all the notes they were in the hands of Nevius in New York—they could not have been properly presented and demand of payment made without the presence of the notes. The fact that Moore may have notified McClellan and Baughman that their notes were due falls far short of answering the requirements of the law relative to presentment, demand and notice.

## III.

It is next earnestly insisted by learned counsel for appellant that the letter written by Moore, the defendant, to Nevius, the plaintiff, on February 10, 1898, in connection with other letters written prior thereto, constitutes a waiver of presentment, demand and notice, and by such waiver converted his con-

221 Sup—23

ditional liability into an absolute engagement to pay
such notes.  In the letter referred to Moore said to
Nevius: "I admit that you have been very patient in
regard to the Baughman and McClellan notes which
will result in the end to your advantage."  After dis-
cussing his financial affairs generally and his inability
to pay, he wound up with these words.  "So, trusting
you will bear with me a little while longer and assur-
ing you I will do all in my power to settle these matters
at the earliest possible moment, and that threats of
foreclosure and judgment will not bring this about
any sooner."

The only consideration we think necessary to be
given to the language of this letter is whether or
not it was sufficient to constitute a waiver of present-
ment, demand and notice, and  thus continue or rein-
state Moore's liability as indorser.  This letter was not
written by the maker of the notes and as there was
no consideration therefor shown as applicable to the
indorser, it certainly could not have the effect of creat-
ing an independent liability to pay the debt represented
by the notes.  "If the proper steps are not taken to
fix the indorser and thus convert his conditional lia-
bility into an absolute engagement, he is discharged,
unless, with a full knowledge of all the facts of his
release, he promised to pay the debt, or does acts
from which said promise can be clearly and unmistak-
ably inferred."  [Faulkner v. Faulkner, 73 Mo. 327;
Long v. Dismer, 71 Mo. 452.]

In the case of Thornton v. Wynn, 25 U. S. 1. c. 188,
the court used this language:  "These declarations
amount to an unequivocal admission of the original
liability of the defendant to pay the note and nothing
more.  It does not necessarily admit the right of the
holder to resort to him on the note and that he has
received no damage from the want of notice, unless
the jury, to whom the conclusion of the facts from the
evidence ought to have been submitted, were satisfied

that the defendant was also apprised of the laches
of the holder in not making the demand of payment
of the note by which he was discharged from his
obligation to pay it. The knowledge of this fact forms
an indispensable part of plaintiff's case, since without
it it cannot fairly be inferred that defendant intended
to admit the right of plaintiff to resort to him, if in
point of fact he had been guilty of such laches as
would discharge him in point of law. For anything
that appeared to the court below from the evidence
stated in the bill of exceptions, the admission of the
defendant may have been made upon the assumption
that the holder had done all that the law required
of him in order to charge the indorser. That due
notice was given to the defendant he could not fail
to know, but that a legal demand of payment had been
made of the maker of the note could not be inferred
by the court from the admission of the defendant.''

In Dyas v. Hanson, 14 Mo. App. 363, it was ex-
pressly held by that court, that ''the rule is that a
party relying upon a waiver of liability must prove
that it was made with full knowledge of the facts by
the party who thus releases his rights.'' To the same
effect is Thresher Co. v. Pierce, 74 Mo. App. 676. It
is there said: ''To constitute waiver there must be
actual knowledge of all the facts and an acquiescence
in the failure of the other party to have lived up to
the letter of his contract.''

Our attention is directed by learned counsel for
appellant to a line of cases treating of the sufficiency
of an acknowledgment of a debt in order to take it
out of the Statute of Limitations. An examination
of those cases will demonstrate that they have no ap-
plication to an indorser, but the conclusions reached
and the rule announced in these cases manifestly had
in view the person originally bound as a maker of the
note, and in such cases it is obvious that it is not
necessary that the party acknowledge a willingness to

pay the debt. It is sufficient that he acknowledges that he owes the debt and that it is not paid. [Chidsey v. Powell, 91 Mo. 622, and cases cited.] But these cases are not applicable to the facts of this case. If the letter referred to of February 10, 1898, considered in connection with prior letters written by Moore, has any effect whatever in creating a liability on the part of Moore in favor of Nevius, then it is that of indorser. It must have the force and effect of waiving the duty incumbent upon Nevius to present the notes to the makers for payment and giving notice to Moore of the refusal of such payment. In order to hold Moore liable for the payment of these notes as indorser, on the ground that the letters as herein indicated constitute a waiver of presentment, demand and notice, it was absolutely essential, as ruled in the cases heretofore indicated, that Moore at the time of writing the letter had knowledge of all the facts and knew that there had not been due presentment to and demand of the makers for the payment of such notes and their refusal to make such payment.

There is an entire absence of any evidence indicated by the record that Moore, at the time he wrote the letter herein referred to, knew that the notes had not been presented to the makers for payment. Obviously the defendant, Moore, knew that he had not received notice of the presentment to and demand of the makers for payment of the notes and their refusal to make payment, but that is not sufficient, in the absence of testimony showing that he had knowledge of all the facts, to give the letters as indicated herein the force and effect of a waiver of presentment, demand and notice.

But aside from what has been said heretofore, that the facts developed did not constitute a waiver of presentment, demand and notice, it is very questionable as to whether or not under the allegations in the petition of this case any testimony tending to

show a waiver was admissible. It is expressly alleged in all the counts of the petition that at the maturity of said notes the same was duly presented and demand of payment of the same was duly made upon the maker, which was by him refused, of which presentment and non-payment defendant, George T. Moore, had due and timely notice, whereby said Moore became liable to pay the amount of said note to plaintiff.

It was ruled in Pier v. Heinrichoffen, 52 Mo. 333, that an allegation in the petition, as in the case at bar, of demand of payment, at maturity, and due notice thereof to the indorser, could give no intimation to the defendant of the nature of the evidence, by which the plaintiff proposed to sustain it. The indorser could only know that he received no notice; but of what steps if any were taken to give it, or of the causes of the failure to give it, or of the facts relied on to excuse the want of it, he of course is presumed to have no knowledge. "These are matters within the knowledge peculiarly of the plaintiff, which he should allege in his pleading and prove."

In First National Bank of Burlington v. Hatch, 78 Mo. l. c. 24, the case last cited was unqualifiedly approved. It was there said that "the instruction of plaintiff relating to a waiver of presentment and notice of dishonor, was properly refused. When the plaintiff, in his petition, alleges presentment and notice of dishonor, he is not permitted, under our Practice Act, to prove that the defendant waived such conditions, in the absence of proper averments of a waiver."

It is alleged in the respective counts of the petition that "the defendant in the year 1898 admitted in writing his liability to plaintiff for the amount of said note with interest and promised to pay the same, but has failed so to do, and same is now due and payable." This allegation, in our opinion, is not suf-

ficient to admit the proof of the facts as indicated by
the record tending to show waiver of presentment, de-
mand and notice.   As said in Pier v. Heinrichoffen,
supra, of what steps if any were taken by the plain-
tiff to give it, or of the causes of the failure to give it,
or of the facts relied on to excuse the want of it,
the indorser, of course, is presumed to have no knowl-
edge.   These are matters, as said in that case, within
the knowledge peculiarly of the plaintiff, which he
should allege in his pleading and prove.   Manifestly
the plaintiff in this case did not intend by the allega-
tion, as heretofore indicated, to tender the issue of a
waiver of such demand.   If such was the case then
clearly the pleading would be open to the charge of
duplicity, for it is expressly alleged that due demand,
protest and notice had been made, and manifestly the
pleader did not intend by the allegation that in the
year 1898 the defendant admitted his liability to
plaintiff on account of his indorsement of said notes
and promised to discharge the obligation thereby
created, to contradict the allegation which preceded it,
that due demand, protest and notice had been made,
and that defendant, with full knowledge of all the
facts, had waived presentment, demand and notice of
non-payment.   In other words, such allegation should
not be construed as saying that due demand, protest
and notice had not been made.

  We repeat, that the allegation concerning the ad-
mission of liability of the indorser to the plaintiff
is not such a concise statement of the facts which
would constitute a waiver as would give a sufficient
intimation to the defendant of the nature of the evi-
dence by which the plaintiff proposed to show a waiver
of due presentment, demand and protest.   In other
words, if plaintiff was relying upon a waiver of pre-
sentment, demand and notice of non-payment, then he
should not have alleged that due presentment, demand
and notice was made, but should have expressly alleged

the facts upon which he relied to constitute a waiver of such presentment and demand of payment. But as we have held, even conceding that the pleading was sufficient to admit of the proof, still the evidence as introduced was insufficient to show a waiver. There is no necessity for further discussing this proposition.

## IV.

It is next earnestly insisted by appellant that the pledge by him of the McClellan notes to respondent to secure the payment of $800 borrowed by appellant was fraudulent and void in this, that Moore misrepresented the facts to the appellant in claiming that the money was to be furnished by one Reid or some other person, when, as a matter of fact, he furnished the money himself. It is claimed that in 1901 Moore converted and appropriated the McClellan notes to his own use by having the deeds of trust securing the same foreclosed and buying the property in his own name. It is also claimed that Moore furnished the money himself for this loan and got possession of the McClellan notes for the purpose of destroying his liability as indorser. As applicable to these claims and contentions on the part of the appellant it must not be overlooked that the appellant, Nevius, knew that he was executing the notes to secure the $800 to Moore, and equally had full knowledge that the written pledge contained in his letter was also made to Moore. This contract of pledge gave express authority to sell under the deeds of trust. So far as the sales under the deeds of trust were concerned the record discloses no attempt to charge or prove any fraud, except in so far as it is claimed that the failure of Moore to notify Nevius of the fact and the time of sale, and that the sales had taken place, were badges of fraud. No complaint is made of the want of proper

notice under the terms of the deeds of trust, or that there was any scheme or fraud resorted to on the day of the sale. The record, disclosing the evidence, makes no showing as to value of the property, or that it was sold to Moore for less than its value. Pertinent to the consideration of the claims insisted upon by appellant as to fraud and misrepresentation is the testimony of the defendant, Moore. He testified that he obtained the money furnished Nevius, the appellant, from his wife. This testimony was a correction of the statment as made in the deposition that he obtained the money from Reid. Upon this state of facts, it being undisputed that the notes for the $800 furnished Nevius, the appellant, by Moore were executed by Nevius to Moore, and that the pledge as security for such note of the McClellan notes was also in the name of Moore, and that Nevius knew these facts and made no objection to them, in our opinion it was immaterial whether he obtained the money from his wife or Reid. It is apparent that Moore furnished the $800 to the appellant, Nevius, and whether such money was the money of Reid, or the money obtained from his wife, we are unable to conceive how this could in any way affect, injure or prejudice the rights of the appellant. While it is true that under the written pledge Moore had no right to sell or dispose of the McClellan notes, and he did not sell them; they were held for himself or by him as agent for Reid or his wife, but he did have the right, in pursuance of the written pledge, to foreclose the deeds of trust after the maturity of the McClellan notes. After the foreclosure and purchase by Moore he unquestionably held title to the lots purchased in trust, subject to the right of Nevius to redeem his notes and demand a conveyance to himself of the lots of ground so sold. This Nevius never did, nor has he offered to do so.

The law is well settled that the obligation and duties of a pledgee and pledgor are mutual and re-

ciprocal. While the pledgor must be ready and willing and offer to pay the indebtedness before demanding a return of the collateral, the pledgee also when he demands payment of the original indebtedness must be ready to return and deliver to the pledgor the collateral left with him as security. [Richardson v. Ashby, 132 Mo. 238; Hagan v. Bank, 182 Mo. 319.]

The appellant, Nevius, in this cause has never offered to pay his note for $800 made to Moore, nor does he make such offer now, either in his pleading or otherwise, except by requesting that an accounting be taken between himself and Moore; that his claim against Moore be set off against his notes made to Moore and that he have judgment for the balance.

Under the facts as disclosed by the record in this cause we have reached the conclusion that at the time of the institution of this suit Moore was not indebted to Nevius; hence it logically follows that the allegations in the petition failed to amount to a tender of offer to redeem. It may be that appellant, Nevius, is entitled to have the McClellan lots conveyed to him by Moore upon the payment by him of the debt of $800, together with interest, but the difficulty of entering a decree of that character is that the appellant, Nevius, has not performed nor offered to perform what the law requires of him, that is, the payment of or a tender of payment of the notes for $800 executed to the respondent Moore. The fact that Moore did not notify Nevius of the time of the sales under the deeds of trust, nor of the fact that the sales had taken place, in our opinion did not prejudice his rights, nor take from him the continuing right to redeem his pledges.

## V.

Upon the second count of the petition, which is predicated upon the Baughman note and deed of trust, it is sufficient to say that the record discloses that

the appellant, Nevius, accepted upon trial a deed to the real estate covered by the deed of trust to secure the Baughman note, hence it follows that there is no necessity for a consideration of the Baughman note.

We have given expression to our views upon the legal propositions as disclosed by the record, and have carefully reviewed all the facts developed upon the trial. In our opinion the judgment of the trial court should be affirmed, and it is so ordered.

All concur.